ANNA GARNER et al., Appellants, *v.* THE GERMANIA LIFE INSURANCE COMPANY, Respondent.

Upon the application of L., made expressly as trustee for his three children, defendant issued in 1863 a policy upon his life, which described the premium as paid by him " in trust for his children," naming them, and covenanted in terms to pay the sum assured to the three children or their guardians upon the death of their father. The policy remained in L.'s possession and the premiums were paid by him until 1878. The premium for that year was not paid when due, but four days thereafter L. surrendered the policy to defendant and took out a new one for the same amount, and calling for the same annual premiums, which was made payable to his second wife. There was no new examination of L.; the new policy bore the same number of the one canceled and stated the age of L. as thirty-nine " in 1863." The first premium was paid in part by a dividend earned by the earlier policy, and the new policy acknowledged the receipt by defendant of the premium and of $1,429.44 " to be paid on delivery of this policy." That amount was paid by the cancellation of the old policy and the transfer of its surrender value to defendant in

reduction of the annual premiums. L. died in 1879 and defendant paid the amount due thereon to his widow. In an action upon the first policy, brought by the assured named therein, *held*, that plaintiffs were entitled to recover; that after notifying the beneficiaries of the trust and acting upon it until it had become valuable to them, L. had no right to end it without notice to them; that the plaintiffs had a vested interest in the policy at the time of its surrender, measured and represented by its surrender value, with which L. could not deal in contravention of their rights; that his possession of the policy was consistent with the trust; that the original policy did not lapse, the failure to pay the premium of 1878 having been waived by defendant by issuing the new policy, which was, in effect, a continuation of the original.

*Whitehead* v. *N. Y. L. I. Co.* (102 N. Y. 143) distinguished.

Good faith cannot be asserted by one who aids in the diversion of a known trust fund from its lawful owners.

Also. *held*, that the trust was not so far executory as to be revocable; that each payment of premium added to the surrender value of the policy and fully executed the gift to the extent of that value, and, so far as executed, L. could not destroy the trust, or, either alone, or together with the insurer, wrest from the beneficiaries the product of the trust and divert it into other channels.

(Argued June 11, 1888; decided October 2, 1888.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made June 26, 1885, which affirmed an order of the court on trial dismissing plaintiffs' complaint.

This action was brought by plaintiffs to recover $3,000 and interest upon a policy of insurance issued by the defendant September 24, 1863, upon the life of John Lindemann.

The facts are sufficiently stated in the opinion.

*Otto Horwitz* for appellants. The children of John Lindemann had a vested right in the policy surrendered. (*Fitch* v. *Am. Popular L. Ins. Co.*, 59 N. Y. 557; *Eddington* v. *Mutual L. Ins. Co.*, 67 id. 185; *Ferguson* v. *Mass. Mut. L. Ins. Co.*, 32 Hun, 306; *Glanz* v. *Gloeckler*, 15 Rep. 334; *Hutchings* v. *Miner*, 46 N. Y. 456; *Thompson* v. *Am. Tontine L. Ins. Co.*, Id. 674; *Whitehead* v. *N. Y. L. Ins. Co.*, 63 How. 394.) Aside from the fact that the contract is with the children, and hence cannot be altered without their con-

sent, it is made for their benefit, and is inalienable without their consent. (*Thompson* v. *Am. Tontine L. Ins. Co.*, 46 N. Y. 674; *Fowler* v. *Butterly*, 78 id. 68; *Fitch* v. *Am. Popular L. Ins. Co.*, 59 id. 557; *Greeno* v. *Greeno*, 23 Hun, 478; *Valley Mut. L. Ins. Co.* v. *Burke*, 7 Virg. L. J. 173; *Goslin* v. *Caldwell* [Tenn.] 27 Am. Rep. 774; Bliss on Life Ins. [2d ed.] §§ 317, 337; *Pilcher* v. *N. Y. Life Ins. Co.*, 33 La. Ann. 322; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 id. 143; *Knickerbocker L. Ins. Co.* v. *Weitz*, 99 Mass. 157; *Chapin* v *Fellowes*, 36 Conn. 132; 17 Abb. N. C. 21; *Weston* v. *Richardson*, 47 L. T. R. [N. S.] 514; *Timayenis* v. *Union Mut. L. Ins. Co.* [U. S. Cir. Ct., S. D. N. Y., 1884] 21 Fed. Rep. 223; *Nat. L. Ins. Co.* v. *Haley*, 78 Me. 188; *Pingrey* v. *Nat. L. Ins. Co.*, 144 Mass. 374; *Lemon* v. *Phœnix Ins. Co.*, 38 Conn. 294; *Barry* v. *Brune*, 71 N. Y. 261; *Landrum* v. *Knowles*, 7 C. E. Greene [N. J.] 594; *Manhattan Ins. Co.* v. *Smith*, 44 Ohio St. 156; *Wilburn* v. *Wilburn*, 83 Ind. 55; *Ruppert* v. *Union Mut. Ins. Co.*, 7 Robt. 155.) The policy remained in full force and effect up to the time of the death of the insured as the policy issued in lieu of it was in full force and effect, and must be deemed a continuation thereof. (*Barry* v. *Brune*, 8 Hun, 395; affirmed, 71 N. Y. 261.)

*Rudolph Dulon* for respondent. The children of John Lindemann had no vested rights in the old policy when it was surrendered by him. If there was a trust, it was executory and revocable in its nature. (2 Kent's Com. 438, 439, 440; *Autrobas* v. *Smith*, 12 Vesey, 39; *Pennington* v. *Gittings*, 2 G. & J. 208; *Jervoise* v. *Duke of Northumberland*, 1 J. & W. 559; *Stone* v. *Hackett*, 12 Gray [78 Mass.] 227.) Payment of premium upon such a contract, under such circumstances, does not operate to make the intended gift irrevocable, because the payment is not made for any such purpose or with any such intention. It is only made to create the inchoate and revocable gift, not to change its character. (*Martin* v. *Funk*, 75 N. Y. 134, 137, 141; *Willis* v. *Smyth*, 91 id. 297; *Mabie* v. *Bailey*, 95 id. 206.) The policy being executory and being retained

by the insured, he had a right, with the consent of the company, to change the beneficiaries. (*Clark* v. *Durand*, 12 Wis. 223; *Kerman* v. *Howard*, 23 id. 108; *Foster* v. *Gile*, 50 id. 603; *Lemon* v. *Phœnix Mut. Life Ins. Co.*, 38 Conn. 294; *Bickerton* v. *Jacques*, 12 Abb. N. C. 25; *Gambs* v. *Cov. Mut. Life Ins. Co.*, 50 Mo. 44; *Swift* v. *R. P.*, etc., *Ass.*, 96 Ill. 309; *Landrum* v. *Knowles*, 22 N. J. Eq. 594; *Pilcher* v. *N. Y. Life Ins. Co.*, 33 La. Ann. 322; *Ricker* v. *Charter Life Ins. Co.*, 27 Minn. 193; *Allis* v. *Ware*, 28 Me. 166; *Union Mut. Life Ins. Co.* v. *Stevens*, 19 Fed. Rep. 671; *Ferdon* v. *Canfield*, 104 N. Y. 143; *Tripp* v. *Vermont Life Ins. Co.*, 55 Vt. 100.)

FINCH, J.   The contract of the insurance company, by its express terms, was made with John Lindemann, as trustee for his children, Johanna, Emilie and Anna.   The application was made by him in that character and not in his individual right. Under the requirement, at the end of the application, "signature of applicant," he signed explicitly as trustee; under the direction, "signature of person whose life is to be insured," he signed as an individual.   The policy described the premium as paid by him "in trust for his children," naming them; and it covenanted, in terms, to pay the sum assured to the three children, or to their guardians, upon the death of their father. The contract, therefore, was one made with the children, through John Lindemann, as their trustee.   His was the life insured, but the contract was not with him, except as trustee for the children, and as representing them.   He took upon himself this office and duty with the full knowledge and assent of the company on the one hand, and the beneficiaries on the other.   Every premium paid by him continued to be an act as trustee and agent for the children, and he could not shake off that character and its duties without their assent, except in one way.   He might omit or refuse to pay a maturing premium, and so suffer the policy to lapse, but the children were at liberty to pay it, though he should refuse, and if they did the contract would remain valid as at first, and suffer no injury or destruction from his refusal to pay, or to further act as his

children's trustee. These children thus had a vested interest in the policy, increasing in value yearly with every payment of additional premium. That interest was measured and represented by its surrender value, which was never the property of John Lindemann in any other sense than as the trust property of the children, created by his act as trustee. He could not deal with it in contravention of their rights, especially with one fully apprised of those rights and of his position and duty as trustee. That he kept the policy in his own possession is an immaterial circumstance, for that possession was consistent with the trust, and in entire accordance with its terms. On the face of the contract he dealt and acted as trustee for the children, and had no personal or individual interest in the policy, and no control over it, except in his trust character and capacity.

What he undertook to do was to destroy the trust by substituting a new and different beneficiary. The policy was issued in September of 1863, and for fifteen years the premiums had been paid. There was no covenant on the part of the company to pay a surrender value, but that value, nevertheless, existed, and what it was sufficiently appeared when the new negotiations began. The premium due September 24, 1878, was not paid on that day, but on the twenty-eighth of that month the trustee surrendered the policy to the company and took out a new one calling for the same annual premiums, but payable to his second wife as the sole beneficiary. There was no new examination; the substituted policy bore the number of the one canceled; it was for the same amount; it called for the same annual premium, and stated the same age of the applicant life as thirty-nine years, adding, as explanation, the words "in 1863." The first premium was paid, in part at least, by a dividend earned by the older policy, and the new one was made possible by the appropriation to it and the absorption by it of the surrender value of the old policy. What that amount was is indicated by the acknowledgment in the new policy of the receipt by the company, not only of the premium, but of the further sum of $1,429.44, "to be paid on delivery of this policy by Louise Lindemann, wife of John

Lindemann." She paid it simply by the cancellation of the old policy and the transfer of its surrender value to the company in reduction of the annual premiums, and by the process took away that amount from the original beneficiaries and appropriated it to her own use. This was accomplished by the joint act of John Lindemann, the trustee for the children, and the company liable for the insurance.

It is justified, first, upon the ground that by the failure to pay the premium of 1878 the old policy lapsed and all rights under it were ended and destroyed. John Lindemann, it is argued, was under no obligation to continue the payment of premiums and so preserve the validity of the policy; his contributions were voluntary, pure gifts and without consideration, and involved no duty to continue them beyond his wish and convenience; and when he refused further payments he simply did as he had a right to do, and was guilty of no wrong to the children by suffering the policy to lapse. All that is quite true, except that after notifying the beneficiaries of the trust which he had voluntarily constituted for their benefit, and acting upon it until it had become valuable to them, good faith required that he should not end the trust without notice to them and an opportunity to preserve it if they should be so disposed, unless it be true that they had no interest or rights in the trust property whatever. But the difficulty with this argument is that the old policy did not lapse at all. The failure to pay the premium of 1878, if there was such failure, was waived by the company in issuing the new policy. That was, in all respects, a continuation and renewal of the old policy, altered only by the substitution of a new beneficiary. Substantially that was determined in *Barry* v. *Brune* (71 N. Y. 261). It is suggested that the facts in that case were that the lapse of the canceled policy was arranged beforehand by collusion with the insurance company, while here the lapse occurred as a fact, without the pre-existing knowledge or assent of the insurer; and it is urged that the latter's good faith should end in a different ruling. But good faith cannot be asserted of one who aids in the diversion of a known trust

fund from its lawful owners to the possession and benefit of another; and the fact of waiver is not changed by the motive, good or bad, of the insurer. The issue of the new policy in continuation of the old one and in preservation of all the essential rights of the latter, distinguishes this case from *Whitehead* v. *New York Life Insurance Company* (102 N. Y. 143) so far as the question of waiver is concerned, for there no new policy was issued at all, and the gratuity paid to obtain possession of the lapsed policy was consistent with a constant and continued assertion of its invalidity.

But the defendant in this case takes still another ground. Assuming that by the policy John Lindemann contracted, as trustee, for the children, it is insisted that the trust was revocable at the option of the trustee, and was so far executory as to be capable of revocation. But I think it is a mistake to assume that the trust was wholly executory. It had been to a large extent executed. Every payment of premium for fifteen years had steadily added to the value of the policy as the property of the beneficiaries. The day of final payment grew nearer and the burden of premiums decreased steadily in number. Each payment made added to the surrender value and fully executed the gift to the extent of that value. What the insured had done for the benefit of the assured he could not undo without their assent, nor take from them what was already theirs and destroy the trust so far as executed. The question here does not reach the inquiry what might be the rule in a case where the insured contracted, in his own name, though for the ultimate benefit of others, for here he contracted explicitly as trustee, and, so far as the trust was executed, neither he alone nor he and the insurer together could wrest from the beneficiaries the product of the trust and divert it into other channels.

These views of the case differ from those taken by the General Term, and require that the judgment should be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.