# MILES *v.* CONNECTICUT MUTUAL LIFE INSUR-ANCE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 92. Submitted December 14, 1892. — Decided January 9, 1893.

A policy of life insurance was issued, insuring the life of a husband for the benefit of his wife, for $5000, for life, a premium named to be paid annually, and, if not paid, the policy to cease. It was made at the instance of the husband, he paid with his own money all the premiums which were paid, being nine, the policy remained always in his possession, and the wife had nothing to do with it. Before the tenth premium became due, the husband advised the company that he could not pay that premium, and wished to take out a paid-up policy, under a provision therefor. The company advised him not to do so but to have so much of the $5000 released as would enable him, with the sum allowed for such release, to pay what would be due as a premium on the remainder. He agreed to do so, and presented to the company what purported to be a receipt signed by his wife for $82.39, as a consideration for the release of $700 of the $5000, the $82.39 being applied towards the premium on the $4300 policy. Thereupon the husband received a policy for $4300 insurance on his life for his wife's benefit, bearing the same number as the $5000 policy, with a less annual premium. A year later he advised the company that he

could not pay the premium on the $4300 policy, and took a paid-up policy for $1195 on his life for the benefit of his wife, having first given the company what purported to be a receipt signed by his wife for $583.24 as a consideration for all claims on account of "policy No." so and so, released, the $583.24 being applied in payment of a premium on a participating paid-up policy for $1195. The wife's name on both receipts was written by the husband without her assent. In a suit on the $5000 policy brought by the wife, the company set up the non-payment of any premium on it after the date of the $4300 policy. *Held*, that that was a good defence, and that there was nothing to justify the failure to pay the premiums.

The cases of *Manhattan Life Ins. Co.* v. *Smith*, 44 Ohio St. 156; *Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143; and *Garner* v. *Germania Life Ins. Co.*, 110 N. Y. 266; distinguished.

THIS was an action to recover on a policy of life insurance. Trial, verdict for the defendant, and judgment on the verdict; to review which this writ of error was sued out. The case is stated in the opinion.

*Mr. Richard P. White* and *Mr. James Aylward Develin* for plaintiff in error.

*Mr. Hunn Hanson* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought by Sarah G. Miles against the Connecticut Mutual Life Insurance Company, in the Court of Common Pleas No. 3, for the county of Philadelphia, State of Pennsylvania, and removed by the defendant, a Connecticut corporation, into the Circuit Court of the United States for the Eastern District of Pennsylvania.

The suit was brought to recover $5000, with interest, on a policy of insurance issued by the defendant on June 20, 1877. The policy set forth that, in consideration of the representations and declarations made to the corporation in the application for the insurance, and the annual premium of $140.20, to be paid to it on or before June 20 in every year, it insured the life of John S. Miles (the insured) for the term of his natural life, in the sum of $5000, for the sole use and benefit of Sarah

G. Miles, (the assured,) the wife of the insured. It was provided in the policy that if any premium thereon, subsequent to the first, was not paid when due, "then this policy shall cease and determine."

All of the premiums paid on the policy were paid by John S. Miles, with his own money. The policy was made at his instance. It remained continuously in his possession, and during the entire time it was in force his wife had nothing to do with it.

The sixth condition in the policy, being one of the express conditions and agreements upon which it was issued and accepted, was as follows: "6th. That if, after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of any subsequent premium when due, then this company will grant a paid-up policy, payable as above, for such amount as the then present value of this policy will purchase, as a single premium : *Provided*, That this policy shall be transmitted to and received by this company, and application made for such paid-up policy, during the lifetime of the said insured, and within one year after default in the payment of premium hereon shall first be made."

In June, 1886, John S. Miles called at the office of the company in Philadelphia, where all the preceding premiums had been paid, and said that he was unable to pay the premium then coming due, and on that account desired to give up the policy for $5000 and take a paid-up policy under the sixth condition above set forth. He was told by the company the disadvantages of doing so, and was advised by it that a plan more beneficial would be to have so much of the $5000 released as would enable him, with the sum allowed by the company for such release, to pay what would be due as a premium on the remaining sum under the policy. The clerk of the company calculated the amount, and finding that if $700 were released an allowance would be made by the company of $82.39, which was very nearly what would then be due as premium on the $4300 remaining, Mr. Miles decided to adopt that course. He procured from the company the

requisite papers for the signature of his wife, and afterwards delivered such papers to the company with her name purporting to be signed to a receipt, dated June 20, 1886, for $82.39, "as a full consideration and satisfaction for all claims and demands" on account of $700 of the amount of the $5000 policy, "released, quitclaimed, surrendered and discharged to said company," the $82.39 "having been applied as follows: In part payment of 1886 premium on the remaining $4300 of said policy." Thereupon, Mr. Miles received from the company its policy for $4300 upon his life for his wife's benefit. That policy was executed and dated June 28, 1886, and stipulated for an annual premium of $120.57. It bore the same number as the $5000 policy.

In June, 1887, Mr. Miles again visited the office of the company at Philadelphia, and said that he could not pay the premium on the $4300 policy, and insisted upon taking out a paid-up policy, though again advised by the defendant against doing so. He was given the requisite receipt to procure the signature of his wife to it, and returned it to the company with what purported to be her signature. This receipt was dated June 20, 1887, and set forth that she had received from the company $583.24 "as a full consideration and satisfaction for all claims and demands" on account of policy No. 145,756, "released, quitclaimed, surrendered and discharged to said company, said amount having been applied as follows: In payment of a premium on a participating paid-up policy" for $1195. Mr. Miles received from the company on July 9, 1887, a policy of that date for $1195, on his life, payable to his wife.

Mrs. Miles testified that her name on both receipts had been written by her husband without her assent; but it also appeared that her name to the application for the $5000 policy was written by him, and that in his dealings with two other insurance companies he had signed her name.

Mr. Miles died in February, 1888, of pulmonary consumption, and his wife testified that a year before his death he was in very poor health. He was able, however, to attend to his business affairs within three months of his death, and there

was no evidence that in June, 1886, he was otherwise than in good health.

In the affidavit of defence put in by the defendant in the state court, there were set forth the issuing of the policy for $4300 and of the policy for $1195, the discharge of the company from all liability on the policies for $5000 and $4300, and the fact that no premium had been paid on the $5000 policy after June 28, 1886. The defendant pleaded *non assumpsit.*

The case was tried before Judge Butler and a jury, in April, 1889. At the trial, the plaintiff asked the court to charge the jury: "1. That if the company united with the agent and accepted the surrender of the policy in suit from him when he had no authority to make such surrender, and did this without notice to or knowledge of the plaintiff, they cannot complain of the non-payment of premium after such surrender and acceptance." To that point, the court answered: "The futile attempt to surrender the policy — and the transaction referred to was nothing more in legal contemplation — had no effect whatever on the rights or obligations of either party. The defendants were not required to notify the plaintiff of the transaction, but they were fully justified in believing, by the conduct and representations of her agent and husband in presenting the paper, which purported to be signed by her, that she knew and authorized the transaction. There is nothing in what is stated in the point sufficient to excuse her failure to pay the premium when it became due."

The plaintiff also asked the court to charge the jury: "2. If the surrender was made without authority, it was a wrongful act on the part of both the company and the agent, and the non-payment of the premium is not a bar to the recovery." The court disaffirmed that point.

The plaintiff also asked the court to charge the jury: "3. The jury are the sole judges of the credibility of the statement of the witnesses as to what took place at the time of the surrender." To that point, the court answered: "It is true, as a general proposition, that the jury are the judges of the credibility of the witnesses, but the jury are not at liberty to disbelieve the witnesses without finding something in their

conduct or statements, or in other evidence in the cause, tending to discredit them, and such finding, under the circumstances, would be unjustifiable.   Furthermore, if these witnesses were disbelieved and disregarded, the result would not be varied. No conclusion that would justify the non-payment of the premiums would be permissible under the evidence, even in the absence of their testimony."

The plaintiff also asked the court to charge the jury : " 4. If the company accepted 'the surrender without taking due steps to ascertain whether Mrs. Miles had authorized it, this was such negligence as amounts to evidence of collusion." The court disaffirmed that point.

The court, in respect to the defence that the $5000 policy was annulled by surrender, charged the jury that that defence was not sustained ; that the policy was not annulled; and that the transaction between the plaintiff's husband, who was her agent, and the defendant, respecting it, was not authorized by the plaintiff, and, therefore, had no effect on her rights or obligations under the contract.

As to the defence that the premiums due on the $5000 policy were not paid, the court charged the jury that that defence was sustained and was fatal to the plaintiff's claim ; and the court further charged the jury as follows: " The premiums, the payment of which was necessary to keep the policy alive, were not paid, and nothing has been shown, in the judgment of the court, which excuses or tends to excuse the failure to pay them.   Whether the failure resulted from the agent's inability to pay or his unwillingness to pay is unimportant.   He did not pay, and the principal must bear the consequences of his failure.   It was her duty to have the payments made, and failing in this she cannot recover."   The court also charged the jury as follows: "As I have already charged you, gentlemen, there is nothing here to justify a failure to pay the premiums, and in consequence of that failure the plaintiff cannot recover, and your verdict must be for the defendant."

The plaintiff excepted to the direction to find a verdict for the defendant, to the refusal of the court to affirm the plaintiff's points 1, 2, 3 and 4, to the answer to each of those points,

and to the instruction of the court that, as the evidence showed that the premiums were not paid, and nothing had been shown to excuse such non-payment, the plaintiff could not recover.

The plaintiff moved the court for a new trial, which was denied, the court holding that, as the papers purporting to be signed by the plaintiff were forged, the act of the defendant in accepting the attempted surrender of the $5000 policy was procured by fraud, and was no more binding on it than the husband's dishonest act was binding on the plaintiff; that there was no justification in the evidence for the position that the act of the defendant seduced the husband from his duty as her agent and created an interest or motive in him hostile to its discharge, or for the contention that, if the company had not allowed the husband to do what he did, he would have paid the premium on the $5000 policy, or would have informed his wife that he had not done so; that the defendant was not required to notify the plaintiff of the situation; that it believed, and was justified in believing, that she knew all about it; that she could justly demand no more than that the transaction (of the surrender) should be treated as if it had not occurred, leaving her rights unaffected; that if she was injured, it was by the faithlessness of her agent and her own failure to supervise his acts, and without any fault of the defendant; that the cases cited by the plaintiff did not rule this case; that *White-head* v. *New York Life Insurance Co.*, 102 N. Y. 143, was readily distinguishable; and that, if it were identical, it could not be followed, because it would not be a sound exposition of the law. The jury having found a verdict for the defendant, a judgment for it was entered thereon, and the plaintiff has brought the case here by a writ of error.

The Circuit Court held that the $5000 policy was not surrendered or cancelled by the transaction between the defendant and Mr. Miles, but it further held that, although the surrender was void, the policy was forfeited, because no premium was paid on it after the attempted surrender.

It is contended that the court erred in not charging the jury in accordance with the plaintiff's requests numbered 1, 2, 3 and 4; that it erred also in making the charges to which the

plaintiff excepted, as before stated; that the defendant, having been guilty of a wrongful act in cancelling the $5000 policy, and having thus declared its intention not to be bound by such policy, cannot take advantage of a failure on the part of the plaintiff to make a tender of a premium which, by its own act, it gave notice it would not receive; that, as Mr. Miles was the messenger of his wife to pay the premiums on the $5000 policy, the defendant, when it dealt with him in another character and for another purpose, made him its agent and acted upon his report at its peril; that the declaration by the defendant that the $5000 policy was at an end, before there had been any default on the part of the plaintiff, was a distinct breach of contract, for which it thereupon became liable and from which it can take no advantage; that the defendant put into the hands of Mr. Miles the means by which he could evade the performance of his duty, and it cannot now set up as a defence his failure to perform that duty; that the $5000 policy was cancelled before the day when the premium was due on it in 1886 had ended, so that the plaintiff was in no default when the defendant annulled its contract; that the plaintiff is entitled to the presumption that, if the defendant had not cancelled the $5000 policy, Mr. Miles would either have paid the premium himself or would have notified the plaintiff of his inability to do so, and she would have paid it; that there was nothing in the transaction but the act of the defendant in unlawfully annulling the $5000 policy; that the case, therefore, is the ordinary one of the rescision of a contract by one party, relieving the other party from performance or tender of performance; and that the plaintiff was entitled to go to the jury upon the question whether the action of the defendant in accepting a surrender of the $5000 policy was in good faith.

The plaintiff relies on three cases in particular, namely: *Manhattan Life Ins. Co.* v. *Smith,* 44 Ohio St. 156; *Whitehead* v. *New York Life Ins. Co.,* 102 N. Y. 143; and *Garner* v. *Germania Ins. Co.,* 110 N. Y. 266. But we think those cases are distinguishable from the one before us.

In *Manhattan Life Ins. Co.* v. *Smith,* a policy had been

issued by the company upon the life of Smith, in favor of his wife. She was entitled by the policy to participate in the profits, a portion of which, in the form of dividends, was to be applied each year to reduce the premium. It had been the uniform practice of the company to give timely notice of the amount of premium, the amount of dividends and the balance to be paid in cash. The company neglected to give such notice, although having knowledge of the residence of the wife, and by reason thereof a premium was not paid at the time specified in the policy. It was held that the company could not set up the failure to pay the premium as a defence to a recovery upon the policy, although by the terms thereof it was to be forfeited in case of failure to pay a premium on any of the dates stipulated therein. The company had uniformly sent such notices to the husband, and he had made payment of the premiums from year to year; but it appeared that the company was informed by the husband that he and his wife had separated, she having commenced a proceeding against him for alimony, and that he was desirous of having the policy changed and made payable to his estate; and it was held that, after that, the company was not justified in treating him as her agent for the purpose either of receiving notice for her of the amount of premium, the amount of dividends and the balance payable in cash, or of making a surrender of the policy. It was further held, that, under those circumstances, an attempt by the husband, without the knowledge of the wife, to surrender the policy to the company, was inoperative, and the rights of the wife were not thereby impaired. It was manifestly held in that case that the wife was entitled to know what amount of premium was due, and when it was due, and that a notice thereof to the husband was not sufficient, because the company knew that the husband was not acting as agent for the wife, but in hostility to her interests and against her. Moreover, in that case it does not appear that the husband informed the company that he could not pay the premium, whereas in the present case Mr. Miles did so inform the defendant, before attempting any surrender.

In *Whitehead* v. *New York Life Ins. Co.*, a husband insured

his life for the benefit of his wife, upon three policies, the money being payable, in the event of the death of the wife, to her children. She died before the husband, and he without the knowledge of the children, surrendered the policies to the company and received the surrender value of them. At the time of the surrender, the premium upon one of the policies was past due, while the other two policies were in full force. Suit being brought by the children upon the three policies, the court held that there could be no recovery on the policy on which the premium was due and unpaid; but that upon the other two policies there should be a recovery, on the ground that, by cancelling the policies, the company placed itself in a position of giving no notice of premiums due, and that, if such notice had been given, it might have resulted in payment. In that case, the amount of the premium was fixed. It does not appear that the father was able to pay the premiums on the two policies; but he did not inform the company that he was not able. In the present case, Mr. Miles informed the defendant that he was not able to pay the premium; and that statement was not discredited at the trial. In view of the distinction between the two cases, we do not feel called upon to express an opinion as to the soundness of the decision in the New York case.

In *Garner* v. *Germania Life Ins. Co.*, the insured was a father who was made by the policy trustee for the beneficiaries, who were his children. A premium fell due on September 24. It was not paid; and four days later, the father surrendered the policy and received a new one for the benefit of his second wife, who was not the mother of the beneficiaries in the first policy. The new policy was for the same amount as the first one, and stipulated for the payment of a like annual premium. In a suit by the children upon the first policy, the defence was taken that it was determined by the failure to pay the premium; but the court held that the new policy was only a continuation or renewal of the one surrendered, and that, therefore, the company waived any failure to pay the premium due September 24. It is manifest that the decision in that case has no application to the case before us.

The case of *Hight* v. *Continental Life Ins. Co.*, 10 Insurance Law Journal, 223, cited by the plaintiff, was a case where the company deliberately violated its contract, by refusing to accept a note in part payment of the premium, as it had done before, in accordance with the terms of the policy, and by requiring the payment of the full premium in cash. In *Pitcher* v. *New York Life Ins. Co.*, 33 La. Ann. 322, also cited by the plaintiff, the company, for the purpose of defeating the right of the beneficiary, became a party to an agreement by which the policy lapsed. The case of *Schneider* v. *United States Life Ins. Co.*, 52 Hun, 130, was decided on the authority of *Whitehead* v. *New York Life Ins. Co.* before referred to.

In the present case, the husband went to the office of the defendant, when the premium was coming due in 1886, and stated to it his inability to pay that premium, before he offered to surrender the $5000 policy, or the defendant agreed to accept the same. There is nothing to show that the defendant connived at the non-payment of the premium, or that Mr. Miles had been furnished with or had money to pay it. The Circuit Court was correct in charging the jury that nothing had been shown which excused or tended to excuse the failure to pay the premiums; and it is entirely manifest that Mr. Miles assured the defendant that he could not pay the premium, before he offered to surrender the $5000 policy, or the defendant accepted a release of it. In June, 1886, the defendant induced Mr. Miles to abandon his purpose of taking a paid-up policy, and in 1887 urged him in vain not to take one. The law imposed no duty on the defendant to inquire into the ability of the plaintiff to procure money to pay the premiums. It had a right to rely on the statement of Mr. Miles, who, in that respect, under the circumstances of the case, was acting within his authority. It had a right to rely upon the assurance of Mr. Miles that he could not pay the premium in 1886, and upon the fact that he did not pay it; and it afterwards acted upon that statement by inducing him not to take up a paid-up policy, and by giving him a reduced policy in exchange for the $5000 policy. It acted with entire good faith, and with good sense and kindness and justice.

We see no error in the action of the Circuit Court, and its judgment is                                                 *Affirmed.*

Mr. Justice Brown dissenting.

I am compelled to dissent from the opinion of the court in this case. I think the company is estopped by its own act to set up the non-payment of the premium as a defence. At the time the original policy was surrendered and the new ones taken out, there had been no failure to pay the premiums as they became due. The surrender was made without the authority or knowledge of the plaintiff, and it is admitted that it was not binding upon her, but it was made by one who did have authority to pay her premiums upon the original policy, and was accepted by the company, and, for the time being, the reduced policies were treated as the only contracts between the parties. In such case the plaintiff was at liberty to ratify the act of her agent or to repudiate it. She took the latter course and brought suit upon the original policy. Under these circumstances she ought not to be prejudiced by the fact that the agent whom she had authorized to pay the premiums betrayed his trust, and attempted to cancel her contract, unless she in some way adopted or confirmed his act. So far as the surrender was concerned, the defendant dealt with the insured at its peril, and was bound to ascertain whether his act was authorized or not, and is in no position to claim that the plaintiff should have paid the premium upon the original policy when it had itself treated it as cancelled. Having elected to treat the original contract as at an end, it is estopped now to claim that the plaintiff had not performed it. " It is a principle of law that he who prevents a thing from being done shall not avail himself of the non-performance which he has himself occasioned." 3 Addison on Contracts, 798.

I think the case of *Whitehead* v. *New York Life Insurance Co.*, 102 N. Y. 143, is indistinguishable in principle from this, and is a sound enunciation of the law upon the point involved. In that case the Court of Appeals of New York held that where a policy in full force was surrendered by the husband,

without the assent of the assured, the subsequent failure to pay the accruing premiums did not alone warrant a forfeiture; that by the agreement of surrender the insurance company did an act the tendency and purpose of which was to prevent future payments by the parties interested, and the company could not defend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred. It is true that it did not appear directly in that case that the insured stated that he was unable to pay the premium, but it does not appear that he was able to pay it, and it is safe to infer that he was not, or he would not have taken a policy for a reduced amount. In neither case was there an actual forfeiture by reason of non-payment of premium before the new arrangement was entered into, though in both cases a forfeiture was probable.

The other authorities cited, though not directly in point, all indicate that where the original policy is surrenderd without authority, and a new one taken out, there can be no forfeiture of the original policy for non-payment of premiums, so long as the new policy is outstanding. *Manhattan Life Insurance Co.* v. *Smith,* 44 Ohio St. 156; *Garner* v. *Germania Company,* 110 N. Y. 266; *Pitcher* v. *New York Life Insurance Co.,* 33 La. Ann. 322; *Schneider* v. *United States Life Insurance Co.,* 52 Hun, 130.

Inasmuch as no cases are cited of a contrary purport, it seems to me that these authorities settle a principle of law which ought not now to be disturbed.