## LINDSEY v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 765.

District Court, W. D., Missouri, S. D.
Oct. 8, 1936.

William R. Ross, of Kansas City, Mo., and Walter E. Connelly, of Springfield, Mo., for plaintiff.

Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., and Mann, Mann & Miller, of Springfield, Mo., for defendant.

REEVES, District Judge.

This case was tried at Springfield on April 11th last. At the conclusion of the trial judgment was given for the plaintiff. At that time an oral opinion was delivered.

The importance of the decision was so great that I have found it proper to review the law applicable to the facts, which were

not in controversy. For the purpose of this memorandum opinion and for a ruling that may be understandingly made upon the motion for a new trial, it seems important that a statement of the facts be here made:

The plaintiff is beneficiary in a policy or contract of insurance dated April 10, 1926, for $5,000. The insured was Lester L. Lindsey, the husband of the beneficiary. The insured died July 2, 1932. All of the premiums on the policy as stipulated therein were paid for the first five years and the first quarterly premium of the sixth year was paid. There was a loan on the policy in the sum of $197. This loan was obtained on April 7, 1931. The application for the policy (becoming a part of the contract) was dated April 14, 1926. It recited the issuance of a former policy dated April 10, 1920, for the same amount. The former policy was characterized as a "Convertible Term Policy." While it was for a period of fifteen years, yet the policy in suit supplanted it as of date April 10, 1926. The application for the present policy was signed by both the insured and the beneficiary. It specifically authorized the defendant to:

"Rewrite said Policy changing it from a 15 year Term Policy, Convertible within seven years, of $5,000....., to a Mod. Life—½ Rate 1st 5 yrs......Policy of $5,-000. ................................

"Policy date to be 4/10/26—age 51.....

"Said original Policy is hereby surrendered to the Company."

The policy in suit is in the face amount of $5,000, with premiums payable quarterly as follows: $33.85 each quarter; after the first five years $67.70 each quarter. It is designated on the back as "Whole Life Policy with Half Rate during First Five Years." This designation also appears on the face of the policy. It contains a schedule of loan and nonforfeiture values. Such nonforfeiture values provide for paid-up life insurance as well as automatic extended insurance. These tables are made up on computations of premiums actually received. The policy contains the following provision in respect of reserve computations: "The reserve upon this policy for which funds are to be held * * * shall be computed upon the American Experience Table of Mortality with three and one-half per cent. interest per annum by the net level premium method."

Other facts which may seem pertinent will be stated in the course of the opinion.

1. Plaintiff's petition was based upon what she conceived to be rights vouchsafed to her by section 5741, R.S.Mo.1929 (Mo.St.Ann. § 5741, p. 4388). This is known as the nonforfeiture statute. This Section forbids forfeiture of a policy of life insurance after the payment of three or more annual premiums. Recovery is sought upon the theory of statutory extended insurance. A rule of computation in case of default in the payment of premiums is fixed by the statute as follows: "The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments on said policy and any other indebtedness to the company secured by said policy, which notes and indebtedness shall then be canceled, the balance shall be taken as a net single premium for temporary insurance (extended insurance)."

My decision at the trial was upon the assumption that the statute contemplated a net level premium without regard to the premium actually stipulated for and actually paid by the insured or policyholder. This constitutes substantially the only question to be considered on the Motion for a New Trial.

2. There is no controversy, and can be no controversy, as to the amount actually paid by the insured during the five and one-quarter years of premium payments. As stated in my oral opinion at the trial, if the computation of net reserve is to be based on the premiums actually received, then clearly the plaintiff would not be entitled to recover, but judgment should be awarded in favor of the defendant.

The question for consideration therefore is whether a net reserve or net value of the policy should be computed upon an assumed and fictitious premium payment or upon the premium actually received from the policyholder.

It must be acknowledged that a contract of insurance, like other valid contracts made upon stipulation of the parties, may become void for failure to comply with conditions such as the nonpayment of premiums. Provisions for the avoidance

of a policy obligation because of default in the payment of premiums are valid unless made invalid by statute. Miles v. Connecticut Mutual Life Ins. Co., 147 U.S. 177, 13 S.Ct. 275, 37 L.Ed. 128; Darby v. Northwestern Mutual Life Ins. Co., 293 Mo. 1, 239 S.W. 68, 21 A.L.R. 920; Ashbrook v. Phœnix Mutual Life Insurance Co., 94 Mo. 72, 6 S.W. 462.

The relation between the policyholder and the company is purely contractual. The right of the policyholder is measured by the terms of the policy contract. 37 C. J. p. 378, § 38.

3. However, in the case under consideration, the policy by its terms provides for automatic extended insurance in case of default in premium payment. Also, because it is a Missouri contract, said section 5741 becomes applicable.

The plaintiff does not rely upon the terms of the policy. Moreover, such reliance could not be had for the reason that the table of nonforfeiture values embodied in the policy would preclude recovery. Such specific provisions would prevail over general provisions. Atlantic Life Ins. Co. v. Pharr (C.C.A.) 59 F.(2d) 1024. The plaintiff is compelled to rely for recovery upon the Missouri statute.

In view of my oral opinion and decision in the case, it is proper to ascertain whether the statute may be interpreted as assuming a fictitious level premium or whether it contemplates the computation upon the premium actually received. As said by Judge Fox, of Missouri Supreme Court, in Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670, loc. cit. 711, 712, 94 S.W. 470, 480, 5 L.R.A.(N.S.) 1114, the Missouri statute was taken from the nonforfeiture statute of the state of Massachusetts. That statute was interpreted in Connecticut Insurance Company v. Commonwealth, 133 Mass. 161, loc. cit. 164. After setting forth the meaning of reserves and net values, the court said: "The fund thus accumulated is not regarded by our laws as the absolute property of the company, but is held by it as a quasi trustee, for the benefit of the policy holders. * * * If the insured violates his contract and forfeits his policy, the company cannot treat the accumulation upon his policy as its property, but holds it for his benefit. Companies doing business upon this plan thus resemble savings banks, exercising the franchise or function of receiving, investing, and managing the money of numerous policy holders."

The accumulation mentioned is from premiums actually collected according to the following theory, as stated by the court: "But the general practice of insurers is, instead of charging such sums, which would increase from year to year, to ascertain what these sums would average each year throughout an average life, and to charge each year such average sum. The necessary effect of this practice is that the insured, during the earlier years of the running of his policy, pays more than it costs to insure him, and thus the company accumulates from year to year a fund which in equity is held for the benefit of the policy holders."

It will be observed from the decision in the Massachusetts case, as well as the decision in the Westerman Case, that the statute was dealing with accumulations actually held by the companies from prepayments of the policyholder.

4. In the case of Rose v. Franklin Life Insurance Company, 153 Mo.App. 90, 132 S.W. 613, the St. Louis Court of Appeals had before it an almost identical question. Judge Caulfield (afterwards Governor) delivered the opinion of the court.

In that case, as here, recovery was sought upon the theory of values which were realized from a computation upon a fictitious level premium. One of the expert witnesses, as in this case, testified that upon such a computation the plaintiff is entitled to recover, but that, as in this case, plaintiff would not be entitled to recover upon the basis of actual accumulations. Judge Caulfield said, 153 Mo.App. 90, loc. cit. 103, 132 S.W. 613, 617: "It follows that the expert testimony of witness Mitchell as to the net value of the policy, being confessedly based upon a false assumption of fact induced by an erroneous construction of the law, is utterly worthless."

Judge Caulfield rejected the artificial standard proffered in that case. I assumed such a standard in the case at bar. The decision in the Rose Case was based largely upon Mutual Reserve Life Insurance Company v. Roth (C.C.A.) 122 F. 853.

Adverting to that opinion, it is to be noted that it was a decision of the Eighth Circuit Court of Appeals, and was written by Judge Thayer and had the concurrence

of Judges Sanborn and Caldwell. Judge Thayer discussed the origin of the nonforfeiture statute and interpretations placed thereon by the Massachusetts courts. Referring to the enactment of the statute in Massachusetts, Judge Thayer said, 122 F. 853, loc. cit. 857: "From the discussions which preceded the adoption of the statute in the state of Massachusetts, it is evident that it was passed to prevent the injustice of forfeiting policies for nonpayment of premiums due thereon when the insurer had in its hands, as the result of premiums already paid thereon, a sum of money, termed the 'reserve,' representing what had been collected in excess of the actual cost of insurance up to the time of the default. It was this reserve—a sum actually paid, and equitably belonging to the policy holder—that the lawmaker intended to say should be applied to prolong the life of the policy."

And then on page 858 of 122 F., Judge Thayer continued: "Applying these rules of statutory construction to the statute in question, and considering the equitable object which it was intended to accomplish, and the conditions existing at the time it was adopted, we feel constrained to hold that it was enacted with special reference to that class of policies termed 'ordinary life' or 'endowment,' where the premium remains fixed or level during the lifetime of the insured, or so long as premiums are payable. It was framed, we think, on the assumption that the premiums on ordinary life and endowment policies are fixed at a rate which gives them an actual net value or a reserve after the payment of a few annual premiums."

The Eighth Circuit Court of Appeals in New York Life Insurance Company v. Rositzky, 45 F.(2d) 758, loc. cit. 764, approved the statement of Judge Caulfield in Rose v. Franklin Life Ins. Co., supra, in defining the net value of an insurance policy under the section of the Missouri statute relied on as "the accumulation of the balance of past net premiums not absorbed in carrying the risk."

In the still later case of Valenti v. Prudential Ins. Co. (C.C.A.) 71 F.(2d) 229, loc. cit. 234, the court in reference to the nonforfeiture statute of Missouri said: "In ordinary life insurance agreements, where the insurance is against death from whatsoever cause, the expectancy of the insured is determined by mortality tables and interest rate, and a reserve is built up behind the premium charged, so that a fund may be accumulated for the payment of the loss when the expectancy is reached, and a value for extended insurance in case of default after the payment of a prescribed number of premium payments."

5. It is obvious from the foregoing that both the Missouri courts and the federal courts in construing the nonforfeiture statute of Missouri have said that the reserve accumulation was an actual and not a fictitious reserve or net value. This means that the computation must be made upon the basis of the premiums actually collected and not upon an assumed level premium.

In computing the reserve or net value of a policy, the statute only designates the table of mortality and the rate of interest. It does not interfere in any way whatsoever with the terms of the contract in respect of premium payments. 37 C.J. p. 368, § 18.

Moreover, in this case the insured at an advanced age was paying a heavy premium for a policy comparatively large in amount. The application for the policy in suit was dated April 14, 1926, and specifically described the policy applied for as "Modified Life ½ Rate first 5 yrs." Undoubtedly the insured, as well as the beneficiary who joined in this application, had discussed with the defendant's agent the benefits of premium payments upon such a basis. If the policyholder had deceased during the first five years, the so-called mortality strain upon the defendant would have been much greater. There was an advantage in favor of the policyholder in receiving a policy of this character.

According to all of the books, as well as the opinion of the actuarial experts, a reserve at a given time is the difference between the net single premium as of the attained age of the insured and the present value of future premiums receivable. By the two rates agreed upon in the policy, the reserve actually accumulated was adequate to mature the policy. That becomes unimportant, however, in the decision of the case.

It appears that the reserve computation should have been made upon the basis of premiums actually paid and not upon the basis of a fictitious premium assumption. The policyholder and his beneficiary were entitled only to the benefits of the excess payments made by the assured during the

years payments were actually made. The statute protects him and his beneficiary in the fund thus accumulated but no more. It would not be equitable nor just to give the insured the benefit of an accumulation in excess of that which the premium paid by him actually yielded. The provision in the policy for computations of reserves or net values upon "the net level premiums method" is not made inapplicable because of the circumstance that there are two successive net level premiums stipulated in the policy contract.

I conceive myself bound by the interpretation of the statute made by the courts of Missouri as well as the courts of this circuit. Because of this fact it is obvious that I was in error in awarding recovery to the plaintiff.

It must follow that the motion for new trial should be sustained. It is so ordered.