D. W. Blacksher and First National Bank of Mobile, Alabama, Executors of the Estate of James Uriah Blacksher, Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 88453. Promulgated October 25, 1938.

*George E. H. Goodner, Esq.*, for the petitioners.
*Francis S. Gettle, Esq.*, for the respondent.

1000

### OPINION.

SMITH: Section 302 (g) of the Revenue Act of 1926 provides in material part as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property. * * *

 * * * * * *

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

Article 27 of Regulations 70 (1929 Edition) provides in part:

*Insurance receivable by other beneficiaries.*—All insurance in excess of $40,000 receivable by beneficiaries other than the estate, regardless of when taken out, must be included in the gross estate where the decedent during his life retained legal incidents of ownership in the policies of insurance, as, for example, a power * * * to surrender or cancel the policies, to assign them, to revoke an assignment of them, to pledge them for loans, or to dispose otherwise of them and their proceeds for his own benefit, etc.

The first question for our determination is whether the value at the time of decedent's death of the three above described insurance policies on decedent's life, policy No. 1,176,103 issued by the Mutual Life Insurance Co. of New York, and policies Nos. 328,782 and 328,783 issued by the Union Central Life Insurance Co., are includable in decedent's gross estate. See allegations of error 4 (a), (c), and (d) above.

The respondent contends as to those policies that the decedent retained until his death certain incidents of ownership which rendered them includable in his gross estate under the above regulations and the rule laid down by the Supreme Court in *Chase National Bank of City of New York* v. *United States*, 278 U. S. 327. The holding in that case was that the proceeds of certain life insurance policies were includable in the decedent's gross estate. The Court said:

A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, * * * and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, * * * is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death.

The respondent submits that under the laws of the State of Alabama, where the policy contracts were executed, the rights and interests of the decedent in the policies at the time of his death must be determined in accordance with the express provisions of the policies themselves as those provisions may have been construed by the courts of that state. Reference is made to sections 8371 and 8375 of the Alabama Code of 1928, Annotated, and to *State Life Insurance Co. of Indianapolis* v. *Westcott*, 166 Ala. 192; 52 So. 344.

We said in *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970, that:

Whether or not the proceeds of these policies are to be included in the gross estate depends, regardless of the time or terms of their issuance, upon whether decedent had any interest in them at the time of his death. *David A. Reed et al., Executors*, 24 B. T. A. 166; *Estate of John T. H. Mitchell*, 37 B. T. A. 1; *Chase National Bank* v. *United States*, 278 U. S. 327; * * *

The decedent did not reserve the right to change the beneficiary in any of the policies under consideration and no contention is made that they are includable in his gross estate for such reason. Policy No. 1,176,103, issued by the Mutual Life Insurance Co. of New York, contained these provisions:

CASH SURRENDER VALUE.—After three full years' premiums have been paid, * * * this policy may be surrendered and the Company will pay therefor, * * * the amount stated in the table below * * *

LOANS.—After this policy shall have been in force three full years, the Company, within sixty days after written application, and upon the assignment of this policy as security, will, in conformity with its rules then in force, loan amounts within the limits of the cash surrender value, with interest in advance, at the rate of five per cent. per annum, provided: (1) that premiums be fully paid to the end of the policy year in which the loan falls due; (2) that in any settlement of this policy all outstanding indebtedness must be paid.

SURPLUS.—The first distributive share of surplus shall be apportioned to this policy, if in force, at the expiration of *twenty* years from date, and may be drawn in cash or be applied to purchase an annuity. Subsequent distributions shall be made annually during the lifetime of the insured only.

These provisions of the policy do not specify to whom the cash surrender value or loans or surplus shall be paid. There is the provision that "no assignment or hypothecation" of any interest in the policy made by the beneficiary without the written consent of the insured shall be valid.

In *Bingham* v. *United States*, 296 U. S. 211, which involved the question whether the proceeds of certain life insurance policies, under facts similar to those in the instant proceeding, should be included in the gross estate, the Court said:

* * * The decedent had no power, none being reserved, to change the beneficiaries, to pledge or assign the policies after the assignment to his wife, or revoke that assignment or surrender the policies without the consent of the beneficiaries. *Central Bank of Washington* v. *Hume*, 128 U. S. 195, 205, 9 S. Ct. 41, 32 L. Ed. 370; *Miles* v. *Connecticut Life Ins. Co.*, 147 U. S. 177, 181, 182, 183,

13 S. Ct. 275, 37 L. Ed. 128, compare dissent 147 U. S. 188, 13 S. Ct. 279; *Commonwealth* v. *Whipple*, 181 Mass. 343, 63 N. E. 919; *Pingrey* v. *National Life Insurance Co.*, 144 Mass. 374, 382, 11 N. E. 562.

Also, in *Ballard* v. *Helburn*, 9 Fed. Supp. 812; affd., 85 Fed. (2d) 613, it was said:

* * * The policies now under discussion did not expressly nor by implication reserve to the insured the right to claim the loan or surrender values without the consent of the beneficiary, and by the overwhelming weight of the authorities he could not surrender these policies for the cash surrender value, or secure a loan on them, without the consent of the beneficiary. No control of his over the proceeds and benefits of the policies was terminated by his death. His control had already been terminated by his voluntary act in irrevocably assigning two of them, and by irrevocably designating Mrs. Ballard as beneficiary in the others. Nor can it be said that any interest in the proceeds passed at his death from the insured to the beneficiary. Her interest in the proceeds had already vested by virtue of the assignment of two of the policies and by virtue of designation as beneficiary in the others. * * *

The agreement in the policy contract was that the loans on the policy would be made by the issuing company "in conformity with its rules then in force." An official of the issuing company testified in this proceeding that as to the policy under consideration the consent of the beneficiary would have been required either to change the beneficiary, to obtain a loan thereon, or to surrender the policy for its cash value. In *Thomas C. Boswell et al., Executors, supra*, we said that "absence of the power to change beneficiaries in itself deprives an insured of authority in his own right to obtain the surrender value," citing *Levy's Estate* v. *Commissioner*, 65 Fed. (2d) 412, and *Walker* v. *United States*, 83 Fed. (2d) 103.

It does not appear that the laws of the State of Alabama require any different conclusion as to the policies here in question. In *Fourth National Bank of Montgomery* v. *Woolfolk*, 220 Ala. 344; 125 So. 217, the court said:

* * * The written assent and concurrence of the named beneficiary in the policy not reserving the right of change of beneficiary is required to a valid and binding assignment of such policy as to affect the rights of the beneficiary. * * *

The Union Central Life Insurance Co. policies Nos. 328,782 and 328,783 contain substantially the same features as those of the Mutual Life Insurance Co. of New York described above, with the additional provision that the insured should have the benefit of annual dividends. This right to dividends, however, ceased upon decedent's death and was not thereby transferred to any other person. The retention of a life interest in the income from property transferred does not require the inclusion of the property in the transferor's estate for estate tax purposes. *May* v. *Heiner*, 281 U. S. 238; *Tait* v. *Safe Deposit & Trust Co. of Baltimore*, 74 Fed. (2d) 851; *Dwight Whiting*, 35 B. T. A. 100. The right to receive the dividends was not such an interest or "inci-

dents of ownership" in the policies as the Court had reference to in *Chase National Bank of City of New York* v. *United States, supra,* and as is contemplated by article 27 of Regulations 70, *supra.*

We are of the opinion that the proceeds of the above described policies, Nos. 1,176,103, 328,782, and 328,783, are not includable in decedent's gross estate.

Since we have determined that the proceeds of Mutual Life Insurance Co. of New York policy No. 1,176,103 are not includable in decedent's gross estate, it is not necessary to determine its value.

The only other question for decision relates to the values of policy No. 1,603,359, issued by the Equitable Life Assurance Society, and policy No. 1,100,992, issued by the Prudential Insurance Co. of America. The respondent has determined that the values of these policies were $31,022.40 and $30,000, respectively, while the petitioners contend that the values determined in accordance with article 13 (10) of Regulations 70, which regulations were in force at the date of death of the decedent, were $22,215.96 and $21,786.90, respectively.

The basis of respondent's determination of the values is not in evidence. The evidence of record does show, however, that the values were not determined by the respondent on the basis of a valuation of the life annuities payable to the beneficiaries by reference to mortality tables and in accordance with article 13 (10) of Regulations 70. This method of valuing such life insurance policies for estate tax purposes was given approval in *Estate of Archibald M. Chisholm,* 37 B. T. A. 167, where we said:

At the time of his death, the decedent had effectually elected to leave to the beneficiaries only the right to receive future periodical payments during their several lives. * * *

The valuation of such a right or expectancy is a commonplace problem, *Simpson* v. *United States,* 252 U. S. 547. There is no dispute as to the determination through the use of mortality tables of the period of payments to be adopted as to each beneficiary, and in article 20 of Regulations 70, in effect at the time of the decedent's death, the factor of discount and the resulting commuted value is correctly set forth. There is no reason, therefore, why a correct computation can not be made in the conventional manner of the value at the date of death of the future payments to be received by each beneficiary.

In *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, involving the question of determining the value of a gift to charity subject to a life estate, the Court said:

* * * Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the wife's life interest must be estimated by the mortality tables. Our opinion is not changed by the necessary exceptions to the general rule specifically made by the act.

The values of the policies here under consideration will be determined under the method indicated above.

*Judgment will be entered under Rule 50.*