ANN WEATHERBEE *vs.* NEW YORK LIFE INSURANCE
COMPANY.

Suffolk.    January 7, 1901. — May 21, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

A married woman took out an insurance policy on the life of her husband and,
after paying premiums on it for several years, gave it to her husband for safe
keeping.   He without the consent or knowledge of his wife surrendered the
policy, and took out in exchange a new policy payable to his legal representa-
tives.   This policy he assigned and the assignee paid the premiums on it until
the death of the assured.   The widow, then first learning of the new policy, sued
on the original policy issued to her, contending that it was still in force and
that the payments of premiums on the new policy were applicable to the old
one.   *Held,* that the first policy was forfeited for non-payment of premiums, the
payments on the new policy having been made upon a contract to which the
plaintiff was a stranger.   Whether the plaintiff was entitled to recover the sur-
render value allowed by the terms of the policy, *quære.*
An act or representation in order to create an estoppel or constitute a waiver must
have been known and relied upon by the person seeking to set it up.

CONTRACT upon a policy of insurance dated March 9, 1864,
issued by the defendant upon the life of Freeman F. Weatherbee
and payable to the plaintiff, his widow.   Writ dated November
3, 1899.

In the Superior Court the case was heard on agreed facts and
judgment ordered for the plaintiff for $3,469.65, and the de-
fendant appealed.

From the agreed facts the following appeared: On Decem-
ber 30, 1863, Ann Weatherbee, the plaintiff, and Freeman F.
Weatherbee, her husband, applied to the defendant for a $2,000
ten-payment life policy.   This was issued January 14, 1864, on
the life of Freeman F. Weatherbee, payable to the plaintiff
or her legal representatives.   On an application by the plain-
tiff and her husband for additional insurance to the amount
of $1,000, the defendant, combining the policy of January 14,
1864, and the application for additional insurance, issued a new
policy for $3,000, dated March 9, 1864.   When the last de-
scribed policy was issued, it was delivered to the plaintiff by the
general agent of the defendant in Boston, and the first premium

on the policy was paid by her. The plaintiff retained possession of the policy until 1866 or 1867, when she delivered it to her husband for safe keeping. During the time the policy was in the plaintiff's possession, she paid all the premiums thereon from her own money. The premiums were paid and all the requirements of the policy fully performed up to December 30, 1870. The interest on a premium note due on January 4, 1871, was not paid when due, but was subsequently paid. In 1874 the premium notes were returned to Freeman F. Weatherbee at the time of the payment of the sum of $54.10 to the company, when the policy by its terms became a paid up policy.

On January 4, 1871, the policy was returned by Freeman F. Weatherbee to the defendant, without the knowledge or consent of the plaintiff who was named as beneficiary therein, and Freeman F. Weatherbee requested in writing a change of interest to his own favor. At the request of Weatherbee, one Russell, the defendant's general agent, indorsed on the policy the following: "Payment of $82.86 renewal premium." And Russell made indorsements on the margin of the policy returned to the defendant, to the effect that a new policy " in favor of self " had been issued. Without any new examination or application a new policy dated January 5, 1871, payable to Freeman F. Weatherbee's legal representatives sixty days after proof of his death, was issued by the defendant in place of the policy returned.

This last mentioned policy was assigned on January 9, 1871, by Freeman F. Weatherbee to one George W. Brown " as collateral security for any indebtedness from me to him at the time of my decease." The defendant, after this assignment, paid to Brown dividends which had accrued on the policy dated March 9, 1864, and the dividends which had accrued under the policy issued in 1871, treating the last policy as a continuation of the first. The payment of dividends to Brown was continued up to June 26, 1875, when Brown assigned the policy to one William W. Forbes, plaintiff in the case of *Forbes* v. *New York Ins. Co., ante,* 139, after which date the dividends were paid by the defendant to Forbes. The assignment to Brown was made by Weatherbee to secure the payment of certain notes.

All the premiums on the policy last issued were duly paid to the defendant up to December 30, 1873, when by its terms the

policy issued March 9, 1864, was to become a paid up policy, and all the other conditions and requirements of the last policy to be kept or performed by Freeman F. Weatherbee or the plaintiff were duly kept and performed up to the time of Freeman F. Weatherbee's death on October 14, 1896. The plaintiff gave the defendant due and proper notice and proof of Weatherbee's death, and demanded payment of the amount of the policy from the defendant on July 11, 1897. The plaintiff did not know of the return of the policy dated March 9, 1864, to the defendant and the issuing of a new policy in its place, changing the designation of the beneficiary, until after Freeman F. Weatherbee's death.

Upon the foregoing facts the plaintiff contended that the policy issued March 9, 1864, continued in full force, and that the premiums paid on the policy issued January 5, 1871, were applicable to the policy issued March 9, 1864, and that she was entitled to recover the insurance money, with interest.

The case was argued at the bar in January, 1901, and afterwards was submitted on briefs to all the justices.

*I. R. Clark,* (*W. A. Morse* with him,) for the defendant.

*J. E. Cotter,* (*E. S. Fellows* with him,) for the plaintiff.

HOLMES, C. J. This is an action at law upon a policy of insurance issued to the plaintiff and subsequently surrendered by her husband without her knowledge, he taking a new policy payable to himself. The proceeding is not a bill in equity and is not brought for the purpose of enforcing a trust in the second contract. See *Nesbitt* v. *Berridge,* 10 Jur. (N. S.) 53; *Barry* v. *Brune,* 71 N. Y. 261; *Chapin* v. *Fellowes,* 36 Conn. 132; *Lemon* v. *Phœnix Ins. Co.* 38 Conn. 294, 302; *Matlack* v. *Seventh National Bank,* 180 Penn. St. 360. It must be taken to assume the first to be in force and to refer to the second, to which the plaintiff is a stranger, simply for the purpose of seeking to have the payments of premiums under it treated as payments upon the first and as enuring to the benefit of the plaintiff. This cannot be done. No doubt the attempt to substitute a new contract for the old one was void, but the plaintiff cannot give the payments under it a new character by attempting to ratify or adopt them. She cannot affirm or adopt them except as they were made, and they were made upon a contract to which, as we have said, she was a stranger.

The plaintiff contends that at all events there has been no forfeiture of the policy because the defendant by assuming to end it exonerated the plaintiff from tendering the premiums under it. Language to that effect can be found in one case, at least. *Pilcher* v. *New York Ins. Co.* 33 La. An. 322, 326. See *Garner* v. *Germania Ins. Co.* 110 N. Y. 266. But there can be no estoppel or waiver by conduct of which the plaintiff was ignorant. We assume that she was within the scope of the defendant's act which was directed against the contract to which she was a party. But it cannot be assumed that if the plaintiff had tendered the premiums after the surrender ás before, thereby indicating to the defendant that she did not assent to the attempted change, the defendant would not have accepted the money and have fulfilled its obligations. Presumably it was acting honestly in the matter, and believed that it had her assent. On the other hand if we suppose the plaintiff to have been informed of the substitution and to have remained silent for an appreciable time, she probably would have been estopped at a later date, when the value of the policy had changed, to set up her original rights. In short, she cannot take advantage of the defendant's conduct as a waiver without finding herself in the position of having waived her right to repudiate the result.

The question whether the plaintiff is entitled to judgment for the surrender value allowed by the terms of the policy when premiums have been paid for more than two years, was not argued, and we leave it for decision in the Superior Court.

*Judgment reversed; case to stand for further hearing.*