## LEONHARD v. PROVIDENT SAVINGS LIFE ASSUR. SOC.

(Circuit Court of Appeals, Eighth Circuit.    April 15, 1904.)

No. 1,983.

1. INSURANCE—SURRENDER—NONPAYMENT OF PREMIUMS—FORFEITURE—ESTOPPEL.

Where plaintiff's husband, acting as her agent, surrendered a policy on his life, in which plaintiff was named as beneficiary, providing for forfeiture for nonpayment of premiums, receiving in place thereof a policy on a different plan for plaintiff's benefit, and defendant had no knowledge that the husband was not authorized to act for his wife in such surrender, the fact that defendant thereafter failed to give notice of the maturity of subsequent premiums on the surrendered policy, which was an essential prerequisite to insured's default in the payment thereof, did not estop defendant from claiming a forfeiture of the surrendered policy for nonpayment of premiums.

2. SAME—PREMIUMS ON OTHER POLICIES—APPLICATION.

Where plaintiff claimed that the original policy on her husband's life had been surrendered by him without authority, and other policies taken in their stead, which she repudiated, she was not entitled to have premiums paid on the subsequent policies applied in satisfaction of premiums

accruing on the original policy after surrender, in order to prevent a for-
feiture thereof for nonpayment of premiums.

3. SAME—ACTS OF AGENT—LIABILITY OF PRINCIPAL.

Plaintiff's husband, without her knowledge or authority, surrendered a
policy on his life, in which plaintiff was named as beneficiary, for a differ-
ent policy. The original policy had been in the husband's possession as
plaintiff's agent for nearly 10 years, and thereafter, without fraud or de-
ception practiced on plaintiff, she joined her husband in exchanging the
second policy for a third; she, however, believing that she was exchanging
the policy first issued. Held, that plaintiff was precluded from claiming
that the first policy had not been lawfully surrendered and was still in
force.

Appeal from the Circuit Court of the United States for the Eastern
District of Missouri.

In 1885 Conrad A. Leonhard secured from the Provident Savings Life As-
surance Society a policy of insurance upon his life for the benefit of his wife,
Josephine Leonhard, in the sum of $5,000. In 1895, without her knowledge,
he surrendered the policy, and secured from the society another one, for the
same amount, but upon a different plan. In 1902 the second policy was ex-
changed for a third, with the full concurrence of the wife, who joined her hus-
band in consummating the transaction. Shortly thereafter the insured died.
The third policy was for the sum of $5,000, less $1,554.35, the amount of an
exchange note given upon an adjustment of the premium rate, and which,
according to its terms, was to be deducted from any sum payable upon the
policy. The second and third policies were also for the benefit of the wife.
Mrs. Leonhard brought suit to recover the full amount of the first policy and
certain alleged accretions, tendering the third for cancellation. The proofs
showed that when Conrad A. Leonhard obtained the first policy, in 1885, his
wife's name was signed to the application by him as her representative.
From the time the policy was issued to the time of its surrender to the society,
the insured retained possession thereof, and paid all of the premiums. The
application for the second policy recited that upon completion of the transac-
tion the first policy should be deemed to be canceled and void, and it was
signed in the same way as the application of 1885; the insured representing
himself as the agent of his wife. Mrs. Leonhard was ignorant of this change
of policies, and did not learn of it until after his death. The second policy
remained in her husband's possession and he paid the premiums until it was,
in turn, canceled, in 1902, and the third one secured in its place. Mrs. Leon-
hard took part in the transaction resulting in the issue of the third policy.
She signed the application, which recited that it was in exchange for the prior
policy, the number of which was given. She also signed a statement which
contained a recital that the policy to be canceled and a receipt pertaining
thereto were at that time lost or mislaid. She was fully and fairly advised
of everything connected with the transaction, and participated in the discus-
sion of the reasons for the exchange of policies, and the benefits to inure there-
from to her husband, as the insured, and to herself, as the beneficiary. In
fact, she was advised of everything pertaining to the situation, excepting that
it does not appear that she knew that the second policy was a substitute for
the first. She did know, however, that at no time did her husband have more
than one policy of the Provident Society upon his life for her benefit. By its
terms the first policy was subject to lapse and forfeiture upon default in the
payment of any quarterly premium. The quarterly premiums were variable
in amount, and the insured, who paid them, did not know of the exact amount
thereof until he had received notice from the society, which it was its duty to
give. By express provision the insured was designated as the proper person
to receive notices of maturing premiums. The premiums were paid to the
time of surrender in 1895, but none thereafter. The agents of the society
acted in good faith, and were not aware of any lack of authority on the part
of Leonhard to represent his wife in securing the first exchange and surren-
dering the original policy. The society denied liability upon the first policy,
admitted liability upon the third, and paid into court the amount thereof, less

the amount of the note. The Circuit Court upon final hearing dismissed the bill. Complainant appealed.

F. H. Sullivan, for appellant.

Eleneious Smith (William T. Gilbert and Dickson, Smith & Dickson, on the brief), for appellee.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended by the appellant that she had a vested interest in the original policy; that her husband, whose life was insured thereby, had no power, without her consent, to surrender it or to agree to its cancellation (Bank v. Hume, 128 U. S. 195, 206, 9 Sup. Ct. 41, 32 L. Ed. 370; Casualty Co. v. Kacer, 169 Mo. 301, 69 S. W. 370, 58 L. R. A. 436, 92 Am. St. Rep. 641); that authority to make a contract for another is not, alone, sufficient to authorize its cancellation; that power in her husband to surrender the policy for cancellation cannot be inferred from the fact that he procured it in the first instance, retained it in his possession, and paid the premiums thereon (Stillwell v. Insurance Co., 72 N. Y. 385; Whitehead v. Insurance Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787).

These propositions may be admitted as being amply supported by authority, and, were there nothing else to be said, their controlling influence upon the case in hand would be plain. But the terms of the policy which appellant is seeking to restore made it subject to lapse or forfeiture upon default in the payment of any quarterly premium. No premiums were paid after 1895, and therefore, in the absence of some sufficient reason to the contrary, the vitality of the policy ceased, and it was no longer an existing obligation of the defendant. It is claimed by the appellant in this connection that as the failure to continue the payment of premiums was the natural result of the surrender and cancellation of the policy, and as the defendant participated in and was a party thereto, it is estopped from claiming a forfeiture. Whitehead v. Insurance Co., supra; Garner v. Insurance Co., 110 N. Y. 266, 18 N. E. 130; 1 L. R. A. 256. In the Whitehead Case a husband procured certain policies of insurance upon his life for the benefit of his wife, or, in case of her prior death, of their children. The policies were surrendered by him while they were still in force without the knowledge or consent of the assured, and the company paid to him the surrender value thereof. After they were surrendered, no notices of approaching maturity of premiums were given either to the insured or to the assured, and no premiums were paid. It was held that the surrender and the consequent default in premiums were ineffectual to deprive the assured of their rights. The decision, however, was expressly based upon the participation of the insurance company in conduct which was characterized as fraudulent. It knew that the insured was acting beyond his authority. The money consideration for the surrender was paid by the company to the insured, and not to those entitled thereto, and in that way, it was said, the silence of the insured was purchased, and the fact of the sur-

render effectually concealed from those whose interests were vitally affected. Referring to the acts of the insured, the court said:

"His conduct operated as a fraud upon the assured, and in that fraud the insurer participated, with full knowledge of the probable consequences. The company cannot depend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred."

This particular feature of the Whitehead Case was adverted to and emphasized in Frank v. Insurance Co., 102 N. Y. 278, 6 N. E. 667, 55 Am. Rep. 807, where it was said that the company participated in keeping the beneficiaries in ignorance of their rights.

In the Garner Case, supra, the conduct of the insurance company was open to the same criticism. There the insurance contract was made with the insured as trustee for his children, who were named; the application was signed by him as trustee. The company recognized and dealt with him in his trust character and capacity. For 15 years the premiums were paid upon the policy, and the assured had acquired a valuable right thereunder. Without their knowledge or consent, the insured, by an agreement with the company, which knew he was violating his trust, surrendered the policy, and secured for the benefit of another party a substituted policy bearing the same number, for the same amount, calling for the same annual premium, and stating the same age of the insured, with a reference to the date of the first policy. The surrender value of the old policy was absorbed in the new one. A consideration to be paid by the assured in obtaining the new policy—a substantial sum of money—equaled the surrender value of the old one, and was paid by the cancellation of the old policy, in which the new beneficiary had no interest. Concerning the contention of the company that it acted in good faith, the court said that good faith could be asserted of no one who aids in the diversion of a trust fund from its lawful owners to the possession and benefit of another. The principle of these decisions is manifest. To allow an insurer to avail itself of a failure to pay the premiums upon a policy, which directly results from conditions brought about by its own fraud, would be repugnant to the plainest rules of law and justice. But this doctrine is not applicable to the case at bar. Here the course of the defendant is marked with good faith, and all of the acts of the insured were influenced by an obvious desire to aid and protect his wife, having due and necessary regard to his own financial ability. At each surrender and cancellation a new policy for her benefit was issued. The premiums upon the first policy were increasing with the growing age of the insured, and were doubtless becoming burdensome. In signing her name to the original application, he expressed himself as her agent; he retained the possession of the policy as her agent; he received the notices and paid the premiums; and when the policy was surrendered, and the second one was procured in its place, he again expressed his agency. While it is true that, in the face of her sworn denial, these facts may not afford sufficient proof of his authority to act for her in the surrender of the original policy, nevertheless they make for the good faith and innocence of the insurer. This feature of the case brings it within the doctrine of Miles v. Insurance Company, 147 U. S. 177, 13 Sup. Ct. 275, 37 L. Ed. 128, and Schneider v. Insurance Company, 123 N. Y. 109, 25 N. E. 321, 20 Am.

St. Rep. 727. In the former case a policy of insurance was issued upon the life of a husband for the benefit of his wife, with provision for forfeiture upon default in the payment of any annual premium. It was procured by the husband, who paid nine premiums from his own funds, and was always retained in his possession. Before the maturity of the tenth premium he advised the company that he would be unable to pay it, and expressed his desire for paid-up insurance according to the terms of the policy. He was persuaded by the company to accept instead a policy for a reduced amount, and at a less premium. A year later he announced his inability to pay the premium on the second policy which was about to mature, and at his request there was finally issued to him a paid-up policy. In making each exchange of policies he signed his wife's name to the necessary papers without her knowledge or authority. He ceased paying the premiums on each policy after its surrender was agreed to. The company acted in good faith. Action was brought by the wife to recover upon the first policy. The court held that the failure to pay the premiums resulted in its forfeiture.

In Schneider v. Insurance Company a policy was issued upon the application of a husband, insuring his life for the benefit of his wife. Many years afterwards, and shortly prior to the due day of a premium, of which notice was given to the insured as the agent of his wife, the policy was surrendered to the company and canceled; the signature of the wife to the necessary papers being forged. Notices of subsequent premiums were not given. The company was ignorant of the forgery, and acted innocently in the matter. The court, in denying the claim of the wife for a restoration of the policy, said:

"The husband had the possession of the policy, and, in dealing with the defendant in regard to it, was treated as plaintiff's agent; and the rule that, when one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one whose act enabled the fraud to be committed, applies to this case."

The appellant seeks to escape the forfeiture resulting from the non-payment of premiums because of the omission of the company to give notice of the amount and maturity thereof as required by the policy. Her contention is that as the premiums were variable, and their precise amount was determined by conditions wholly within the knowledge of the insurer, the giving of notice was an essential prerequisite to a default. It is doubtless true that this is the general rule. Insurance Company v. Doster, 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65; Life Association v. Hamlin, 139 U. S. 297, 11 Sup. Ct. 614, 35 L. Ed. 167; Hannum v. Waddill, 135 Mo. 161, 36 S. W. 616; Insurance Co. v. Smith, 44 Ohio St. 156, 5 N. E. 417, 58 Am. Rep. 806. But it is applied to cases where there is evidence of a continuing purpose to keep the insurance alive, and where a notice might accomplish a useful result, and possibly to cases where notice is required by statute as a matter of public policy. Generally speaking, the rule is not applied where the failure to give notice is preceded by acts which amount to an abandonment and rescission of the contract by both parties. The giving of notice of the maturity of premiums would be useless where there has been a surrender of the policy, and a declaration, express or necessarily implied, by the person whose duty it was to receive the notice and pay the premiums,

that no further payments would be made. Insurance Co. v. Phinney, 178 U. S. 327, 20 Sup. Ct. 906, 44 L. Ed. 1088; Insurance Co. v. Myers, 109 Ky. 372, 59 S. W. 30. Insurance Company v. Smith, supra, which is relied on by the appellant, is not in point. There a husband, whose life was insured for the benefit of his wife, and who was her agent for the reception of notices and the payment of premiums, had advised the insurer that she had left him and had instituted suit for alimony, and that it was his desire to so change the insurance as to destroy her interest therein. It is clear that in view of his hostile attitude towards his wife, of which the insurer was fully cognizant, it was not justified in continuing to recognize his agency, and it was therefore its duty to send the premium notices to the wife, as the party beneficially interested.

The appellant also contends that the premiums paid upon the second and third policies should be applied upon the first for the purpose of keeping it alive. A sufficient answer to this contention is her repudiation of the second and third policies. The premiums so paid did not come from her funds, and were not paid through mutual mistake. They were paid by her husband, not upon the original policy, but upon the succeeding ones. The clear intent of her husband and the defendant was not to keep alive the first insurance, but to secure and maintain the second and third policies in their order. No principle of law or equity will justify her, while repudiating these transactions as they were intended by the parties thereto, in claiming the benefits of payments from her husband's funds through a diversion from their intended object. She cannot both repudiate and affirm his acts. While disclaiming his agency, she cannot affirm it as to the payment of his moneys thereunder contrary to his intent. Weatherbee v. Insurance Co., 178 Mass. 575, 60 N. E. 381; Id., 182 Mass. 342, 65 N. E. 383; Insurance Co. v. Stevens (D. C.) 19 Fed. 671. Moreover, the amount of payments on the second and third policies was not sufficient to meet the increasing rates of the original insurance; nor would the addition of the surplus or dividend arising upon the surrender of the first policy, and which was duly credited when the second was issued, be adequate to supply the deficiency.

There is another feature of this case which deserves consideration. When the final exchange of policies was made, in 1902, the appellant knew that her husband did not have at any time more than one policy of the defendant upon his life for her benefit. Her belief was that the policy which was then surrendered was the original policy issued in 1885, of the existence of which she learned about the time of its issue. That original policy had been in the possession of her husband as her agent for 10 years. His possession was her possession. As the beneficiary of that policy, she was affected with notice of its character and of all of its provisions. McMaster v. Insurance Co., 99 Fed. 856, 40 C. C. A. 119. When the exchange of 1902 was made, and the second policy surrendered for the third, the character of the former, its incidents, the burdens imposed in respect to premiums, and the desirability of exchanging it for another, were freely discussed with her, and with her husband in her presence. She was an intelligent woman—able to read, speak, and write the English language. There was no fraud or deception practiced upon her. The defendant acted in entire good faith, and

without suspicion of any infirmity in the authority of her husband to represent her in effecting the first exchange. She consented to the surrender of her existing insurance, and the substitution of another more easily carried. She joined with her husband in executing the necessary papers, and she accepted the new policy. Her position now is that she thought she was giving up the original insurance. It was certainly her intent that all prior insurance with the defendant be canceled, and, had she been advised of the transaction of 1895, it is extremely doubtful that her attitude or her acts would have been different. But however that may be, the clear facts of the case; her imputed knowledge of the terms of the first policy; the information she derived from the discussion of the provisions of the second; the good faith of the defendant; that it was her agent, and not defendant's, who erred and exceeded his authority, with actual knowledge of its limitations—preclude her from now assailing the policy which was in part the consideration which she voluntarily offered for the one finally issued to her.

The decree of the Circuit Court will be affirmed.