## THE VALLEY MUTUAL LIFE INS. CO.

### *v.*

### JOS. D. BURKE ET ALS.

*(Supreme Court of Appeals of Virginia, September, 1882.)*

[Virginia Law Journal, 1883, p. 173.]

Life Insurance—Beneficiary—Assignment.*

If a person insures his life for the benefit of another, who is named as the beneficiary in the policy of insurance, the title of the beneficiary to the insurance money is vested immediately upon the issuing of the policy, and there is no power in the person procuring the insurance to defeat that title by assigning or surrendering the policy.

Same—Same—Payment of Premiums—To Whom Benefit Accrues.

Although there is no obligation upon the person procuring the insurance, in the absence of any covenant to that effect, to continue to pay the premiums on such policy, yet if he does so, the benefit will accrue to the beneficiary.

Same—Suit on Policy by Beneficiary—Evidence—Statements as to Health by Insured after Issuance of Policy—Not Admissible against Beneficiary.

In such a case, in a suit on the policy by the beneficiary against the insurance company, declarations and admissions of the insured as to the state of his health at the time the insurance was effected, but made four or five months thereafter, are not admissible in evidence to falsify representations made by him in his application for the insurance.

Same—Same—Evidence—Statements by Insured as to Health to Physician at Time of Issuance of Policy—Admissible.

But statements made by the insured to his physician, as to the

---

*See monographic note on "Insurance, Life and Accident" appended to McLean *v.* Piedmont, etc., Life Ins. Co., 29 Gratt. 361 (Va. Rep. Anno.).

state of his health at the time they were made, and in reference to the cause of his diseased condition, which was apparent to the physician, are admissible in evidence.

### Same—Instructions.

As to the instructions refused and given by the court below, see the opinion.

### Appellate Practice—Verdict Contrary to Evidence.

An appellate court will not set aside a verdict upon the ground that it is contrary to the evidence, unless it is plainly so.

Writ of error and supersedeas to circuit court of Augusta.

The facts sufficiently appear in the opinion.

*Edmund Pendleton* and *Wm. A. Anderson*, for plaintiff in error.

*Tucker & Tucker*, for defendants in error.

ANDERSON, J., delivered the opinion of the court.

This case was argued with great earnestness and ability by the counsel on both sides, and presents questions which are comparatively new and difficult. The conclusions which I have reached, upon careful investigation, are not in accordance with my first impressions.

We will consider the questions as they are raised by the bills of exceptions.

The first bill of exceptions of the defendant below, who is the plaintiff in error here, is to the rulings of the court rejecting its third and fourth special pleas.

The third plea sets out an agreement entered into between the defendant, the insurance association, and Thomas N. Burke, the insured, after the certificate of membership— that is the insurance policy—had issued, to the effect that the said policy, for certain considerations set out in said

plea, should be cancelled, released and delivered up to said defendant, and that said Thomas N. Burke should be thence-forth released from all obligation and liability to pay the defendant any of the moneys, dues or assessments required and stipulated to be paid by the terms of said certificate of membership, or contract.

The fourth plea sets out and avers, in effect, that after the issuing of the certificate of membership to the said Thomas N. Burke, and before his death, viz., on the 29th of May, 1880, he entered into a certain contract in writing with the defendant company, which contract is set out *in haec verba* in said plea, whereby the said parties agreed to submit all questions as to the validity of said policy to the arbitrament of Dr. W. S. McChesney, and that his award should be binding on them respectively, and if adverse to the validity of the said policy, the said Burke should cancel and deliver it to the said defendant; and that, pursuant to the said contract of submission, the said Dr. W. S. McChesney made and delivered an award to the effect that said insurance policy was invalid, of which the said Thomas N. Burke had due notice.

The said policy was effected by said Thomas N. Burke on the 20th of December, 1879, for the benefit of the plaintiffs below, his infant children, the defendants in error here, to whom the insurance money, $2,000, was made payable by the express terms of the policy. The premiums and assessments were to be paid by Thomas N. Burke, and he had paid all that were required by the policy prior to his death, which occurred on the 30th of August, 1880.

The main question raised by these pleas is, Was the policy beyond the control of T. N. Burke after its issuance to the plaintiffs? Upon this question there is some diversity in the decisions. In Bliss on Life Insurance, 2d Edition, a valuable recent work on the subject of Life Insurance,

the doctrine is stated, in section 318, thus : "On issue of policy, title is vested in beneficiary named in it." The author says, "We apprehend the general rule to be that the policy and the money to become due under it, belong, the moment it is issued, to the person, or persons, named in it as the beneficiary, or beneficiaries, and that there is no power in the person procuring the insurance, by an act of his, by will or deed, to transfer to any other person the interest of the person named." And again, in section 337, he says, "No one, other than the beneficiary named in the policy, can assign, devise or surrender it. The person who procures the insurance is under no obligation to continue to pay the premiums, unless he has covenanted so to do, but if he does so, the person originally designated in the policy will derive the benefit. If the policy is for the benefit of a woman and her children, the children, as well as the woman, must concur in the change." In support of these views, he cites authorities from several of the states—Ohio, New York, Massachusetts, Louisiana, Connecticut, Maine—and text-writers.

So likewise, May, another standard writer on Insurance, in section 392, says, where the policy was for the sole benefit of children, "The children in such case become vested immediately upon the delivery of the policy with the entire beneficial interest, and it is then beyond the control of the insured." So, where the policy is issued to the wife, payable to her, or, in case of her death before her husband, to her children, the husband cannot, after her death, surrender and take out a new one for his own benefit. He cites authorities in support of these positions, but we have not now access to the books. And he says, "All the above cited cases proceed upon the ground that when the policy is issued, the rights are vested, and cannot be divested without the consent of those to whom they are secured."

Bliss, in section 347, refers to some decisions which

have taken a different view. The courts of Wisconsin, he says, have held that the person procuring the policy, may dispose of it without the consent of his nominee. He says such a view may avoid many difficulties, but is hardly consistent with legal principles. He cites Kuman v. Howard, 23 Wisc. 108, and Clark v. Derrand, 12 Wisc. 223, as so holding. In those decisions the court lays great stress upon the fact that there was no convenant or agreement on the part of the insured that he will pay the premiums and the assessments and keep alive the policy, and that he may pay them or not at his pleasure, and may abandon the policy if he chooses. The decisions seem to turn on that point.

But that does not appear to be our case. On the contrary, Thomas N. Burke, in his application by articles A and B, obligates himself to pay into the treasury of the company sixteen dollars in cash and all the annual payments during life, and upon the death of each and every member of the association, within thirty days after the date of the notice of such death, to pay his *pro rata* mortality assessment.

In Landrum v. Nowles, 22 N. J. Eq. 594, also referred to by Bliss as holding a contrary opinion to his, a policy of insurance was taken by a wife on the life of her husband, in favor of and made payable to her children. After the payment of several premiums, she assigned the policy in payment of a debt of her husband; and 'the assignee paid the subsequent premiums. After the death of the husband the children sued for the whole of the insurance money. But the chancellor held that they were only entitled to the proportionate value of the policy at the date of the assignment, and the decision was affirmed on appeal. The appellate court said, "To this extent the transaction was finished and executed. But beyond this value nothing could pass to the

appellants (the children) but by a further act of the mother, and which act was entirely voluntary. She had not even agreed to perform such act. Whatever premiums she might have paid beyond those actually paid would have been entirely gratuitous.'' Again, ''the mother of these appellants gave to them the entire interest in this policy, which she herself had paid for ; that to this extent the gift was executed, and consequently could be enforced in equity ; but the acquisition of a further interest by the payment of subsequent premiums was altogether executory and voluntary, and such interest was not acquired by her, and cannot be claimed by her beneficiaries.''

According to the principles of that case, the children of Thomas N. Burke were entitled to the whole insurance money at his death. And at the date of the contracts alleged in the third and fourth pleas the gift to his children had been fully executed, for he had then paid up all in the shape of premium and assessment, which was necessary to be paid, to render the obligation of the insurance company to pay to the plaintiffs after his death the whole insurance money. And there was nothing of title or interest in the said Burke, in relation to the policy, at the date of the contracts alleged in the pleas, which he could assign or surrender, according to the decision just cited. His gift to his children was then fully executed, without any further payments by him of premiums or assessments. And he had no interest or title in the policy in reference to which he could contract.

But the rule, as it is stated by Bliss and May, seems to be supported by high authority, which they cite, and is approved by this court. And they are supported by several very recent decisions by the supreme courts of Minnesota and Louisiana. Ricker v. Charter Oak Life Ins. Co., cited in Sloan's Legal and Financial Register, of April, 1881. And Rilcher v. N. York L. Ins. Co. ; Louisiana National Bank

1 Va Dec—33

v. Same ; Supreme Court of Louisiana, Ins. L. J., April, p.
312, noticed in Southern Law Review of June—July, 1881,
p. 328.    Upon these authorities the circuit court was right
in rejecting the third and fourth pleas.

The second, third, and fourth bills of exception present
the question whether the declarations and admissions of
Thomas N. Burke, made some four or five months after the
issue of the policy, as to the state of his health at the time
the insurance was effected, were admissible in evidence.
The plain inference from what has been said on the subject
of the first bill of exceptions is, that the evidence of the
declarations and admissions of Thomas N. Burke, proposed
to be given by the defendant below, was inadmissible.

The subject of inquiry was the health of the person whose
life was insured, at the time the insurance was effected and
declarations made by him to his physician as to the state of
his health at the time he was under his examination would
be admissible to show what was the state of his health at that
time, as medical men arrive at their conclusions in respect
to the health of their patients in part from what their patients
tell them.    And as the state of the insured's health before
and after the insurance was effected is a legitimate subject
of inquiry, as tending to show what was the state of his
health at the time the insurance was effected, provided it is
sufficiently near in point of time, such evidence would be
admissible.    But the state of the insured's health, four or
five months after his insurance was effected, could in gen-
eral throw but little light on the state of his health at the
time he applied for and obtained the insurance.    But the
inquiry which was excluded was not in relation to the state
of his health in the month of April, 1880, when he was
examined by the physician, but as to the state of his health
in December, 1879, when he effected the insurance, and was
designed to falsify the representation he made in his appli-

cation.   As was said in the Fraternal Life Ins. Co. v. Apple-
gate, 7 Ohio State, 292, they were the statements of a
stranger, who was neither a party to the suit, nor, at the
time when they were made, acting as the agent of the assured
—the plaintiffs.   They were not the declarations of a sick
person in relation to his condition at the time of making them,
but related to transactions and a state of facts long past.
They were not admissions against interest, for he had no
interest in the policy ; and they could only affect injuriously
the interest of the assured.   Nor were they the statements
of one who had been a witness on the trial, and which were
offered to impeach his testimony.   And although they were
the declarations of one who best knew the facts, this would
only go to their weight when their competency had been
established.   The court is therefore of opinion that there is
no error in the rulings of the circuit court, as set out in the
second, third, and fourth bills of exceptions.

The fifth bill of exceptions presents an entirely different
question.   The statements of Thomas N. Burke, which the
defendant company moved to exclude from the jury, were
statements made to his physician in relation to his state of
health at the time they were made, and in reference to the
cause of the diseased condition of his person, which was
apparent to the physician,—a kind of testimony which all
the books say is admissible.

The sixth bill of exceptions is to the refusal of the court
to give the second instruction tendered by defendant's coun-
sel, and to the instruction which the court gave.   The instruc-
tion tendered, and which was refused by the court, is
predicated of the postulate that the statement of Burke in
his application, that he had never been afflicted with any
disease of the heart, is a warranty, and therefore the court
was asked to instruct the jury, in effect, that if the jury
believed from the evidence that the said Burke, at the time

he made his application, or any time previous thereto, had valvular or other disease of the heart, and failed to disclose the same in answering the tenth question in his said application, although they should believe from the evidence that said Burke never knew that he had any disease of the heart, they must find for the defendant. Without expressing any opinion upon the question, whether the statements of Burke, in answer to the tenth question in his said application, were warranties or not, we are of opinion that no such issue was made by the pleadings, and the court was right in refusing to give the instruction as tendered, and very properly gave the following instruction instead : "If the jury are satisfied from the evidence that Thomas N. Burke, at the time he made his application as aforesaid, or at any time previous thereto, within his own knowledge, had valvular or other disease of the heart, and failed to disclose the same in answering the tenth question in his said application, then the jury must find for the defendant."

The seventh and last bill of exceptions is to the refusal of the court to set aside the verdict and grant the defendant a new trial, upon the ground that the verdict was contrary to the law and the evidence. There is no rule more firmly established than this, that the appellate court will not set aside the verdict upon the ground that it is contrary to the evidence unless it is plainly contrary to it. As to the questions of law, we have considered them. And upon the evidence, under the pleadings, we cannot well perceive how the verdict of the jury could have been different. We are of opinion, therefore, to affirm the judgment of the circuit court.

Affirmed.