KENT

*v.*

KENT.

*(Supreme Court of Appeals of Virginia, Sept. 14, 1899.)*

[34 S. E. Rep. 32.]

### Administrator—Private Settlement with Distributees—Accounting.*

Where the administrator and distributees of an estate made a hotchpot statement, showing the condition of the estate and its administration from the time of decedent's death to the time of the statement, and agreed to adopt it as a correct statement of their relation to the estate, it is binding on them, and a subsequent accounting by the administrator should date therefrom, and be based thereon, and not from decedent's death.

### Written Agreements—Parol Evidence to Abrogate—Proof.

Parol agreements and acts of parties, relied on to abrogate a written agreement, must be clearly proven, especially after the lapse of a long time.

### Appellate Practice—Findings of a Commissioner—Reversal.

The supreme court will not reverse the findings of a commissioner based on conflicting evidence, where it has been approved by the trial court, unless it is clearly erroneous.

### Administrator—Accounting—Commissioner's Report.

On an accounting between an administrator and a distributee, the amount found to be due the distributee, by a commissioner to whom the accounting had been referred, is properly credited, on a judgment owing to the administrator by the distributee, as of the date when the commissioner closed his account, and not as of the date of the decree.

---

*See monographic note on "Executors and Administrators," Va. Rep. Anno.; monographic note on "Commissioners in Chancery" appended to Whitehead *v.* Whitehead, 23 Gratt. 376 (Va. Rep. Anno.).

Appeal from circuit court, Wythe county.

Bill by Joseph G. Kent against D. C. Kent, as administrator, to compel an accounting and distribution of the estate of Gordon C. Kent, deceased. From a decree in favor of defendant, complainant appealed. Affirmed.

*Walker & Caldwell* and *Bolling & Kegley*, for appellant.

*J. C. Wysor* and *I. II. Larew*, for appellee.

BUCHANAN, J., delivered the opinion of the court.

The appellant filed his bill in August, 1897, in which he alleged that his father, Gordon C. Kent, departed this life in the year 1869, leaving his widow, the appellant, and the appellee as his distributees ; that at the October term of the county court of Wythe county for that year the appellee, D. C. Kent, his half-brother, on his own motion, qualified as administrator of their father's estate ; that his father died possessed of a very valuable farm, a large amount of personal property, and choses in action ; that in addition to the whole of the personal estate, which went into the hands of the appellee as administrator, he collected the proceeds of the farm ; that the estate owed a large debt, most of which had been paid by the administrator, yet he had never made, as required by law, any settlement of his dealings with the estate, and there was nothing of record to show how he had disposed of the assets that came into his hands, nor what liabilities he had discharged ; that there remained in his hands a very large sum of money for distribution ; that the decedent's widow, the mother of the appellant, died some years after her husband's death, leaving the appellant as her sole heir and distributee, so that whatever is left of the estate must be divided between the appellee and appellant in the proportion of one-third to the former and two-thirds to the latter. The bill made the appellee a party defendant, waived an answer under

oath, and contained the usual prayer for a settlement of his accounts as administrator.

The appellee in his answer to the bill averred that he had paid off all the debts of his intestate, and made large disbursements to the appellant and his mother ; that for four or five years after his father's death his farm had been managed by his widow and the appellant and appellee, but that they had long since settled their accounts in relation to the farming transactions ; that, while it was true that he had never made a settlement of his administrative accounts, he had kept a faithful and accurate account of his receipts and disbursements, including the farming transactions, and on March 28, 1874, he and the appellant and his mother had entered into a hotchpot statement of his father's personal estate into which the farm transactions were carried, showing assets and liabilities and a distribution account, and that on May 6th of that year they signed the hotchpot statement, agreeing that it correctly represented the condition of the estate and the standing of the distributees in relation thereto, and that they would abide by and adopt it, subject only to certain alterations of small amounts provided for in the agreement.

The special commissioner, who was directed to take and state the accounts required by the court, returned two statements with his second report, his first report having been recommitted. Statement No. 1 begins in the year 1869, and embraces all the transactions of the administrator. Statement No. 2 commences in the year 1874, and is based upon the hotchpot statement. Both statements were excepted to by the parties. The exceptions of the appellee to statement No. 1 were sustained, and that statement rejected ; the court being of opinion that the account should commence, not in the year 1869, when the administrator qualified, but with the hotchpot statement, made in 1874. The court also sustained the appellee's exception to statement No. 2, in so far as it failed to give the appellee credit for an item of $17,370.91 claimed by him. The court corrected

statement No. 2 by allowing that credit, and rendered a decree in favor of the appellant for the balance shown to be due, and directed it to be credited on a judgment in favor of the appellee against the appellant, which had been set up by the former in his answer as an offset against any recovery that the latter might make against him in this case.

From that decree this appeal was taken.

The first error assigned is to the action of the court in rejecting statement No. 1 of the commissioner, and adopting statement No. 2, as the proper basis upon which to state the accounts of the administrator.

It appears that, in the year 1874, Mr. J. W. Caldwell, with some assistance from J. B. Baskerville, both attorneys at law, at the request of the parties, made a statement showing that, at that time, the assets of the estate amounted to the sum of $43,571.50, and its liabilities (some of which were estimated) amounted to the sum of $22,856, and that after the payment of the liabilities there would remain the sum of $20,715.50 for distribution, of which amount each distributee's share was $6,905.16.

It further appeared from that statement that the appellee had received on his distributive share $11,685, or $4,780 more than he was entitled to ; that there was due the appellant on his share, after charging him with $2,559, which he had received, the sum of $4,346 ; and that there was due the widow, after charging her with $360, which she had received, the sum of $6,545,—making the aggregate balance due the appellant and his mother $10,891.

Appended to this statement is the following agreement:

"We, David C. Kent, administrator and distributee, and Joseph G. Kent, one of the distributees of the estate of Gordon C. Kent, deceased, hereby agree that the foregoing statements of the amount of the estate and liabilities of the said Gordon C. Kent, and of the standing of the distributees in relation thereto, is a correct presentation of those several

matters ; and we hereby consent and agree to abide by and adopt it, subject only to such alterations (of small amount) as may become necessary on account of small errors in the estimated account to meet unascertained liabilities.

"Given under our hands this 6th day of May, 1874.

"David C. Kent.

"Jos. G. Kent."

"I, Jane L. Kent, widow, and one of the distributees, hereby consent and agree to abide and adopt the statement above referred to.

"Given under my hand, this 6th day of May, 1874.

"Jane L. Kent."

This agreement is binding upon the parties, and must be treated as showing the true state of accounts between the administrator and his decedent's estate and the distributees at that time, and was therefore the proper basis upon which to state the accounts ordered by the court, unless, as the appellant contends, that agreement had been annulled or modified by the parties. The testimony of the appellant tends to show that the appellee and himself had agreed, in the year 1879, to make a restatement of the affairs of the estate, and to readjust fairly their relations to it, and that since that time the appellant had always understood that the appellee would not insist upon the agreement dated May 6, 1874. The appellee, however, does not seem to have so understood the matter. In his deposition he states that he has always regarded that everything connected with the estate between his brother and himself and his brother's mother were adjusted and settled by the hotchpot statement, up to 1874, and that he has not since that time burdened his memory with transactions prior to that date. The evidence relied on to show that the appellant and appellee had agreed to annul or modify the agreement of 1874 is conflicting and unsatisfactory, and is plainly insufficient. Parol undertakings and acts of parties relied on to do away with a written agreement must be clearly and satisfactorily proved, especially after a great lapse of time.

The next assignment of error is that the court erred in treating the farm profits as embraced in the hotchpot statement of 1874.

The evidence upon this point is conflicting.  Mr. Caldwell, who made the statement, says that the farm profits were not included in it.  Mr. Baskerville, who wrote the memorandum and agreement appended to the statement, thinks that the farm transactions were included, and so does the appellee.  The appellant testifies, upon cross-examination, that the statement of 1874 was undertaken for the purpose of a general and complete settlement, but he does not know that it embraces all the farming transactions; that it was their purpose to settle all, including farming, but he cannot state that it was done in one paper.  The memorandum written by Mr. Baskerville at the end of the statement, and appended to it, states that the foregoing statement "takes no account of the present wheat crop, which is yet to be divided."

The administrator also introduced in evidence a receipt from the widow which tends to show that the farm profits were embraced in the hotchpot statement, and of which the following is a copy :

"$360.

"Received of David C. Kent, adm'r of Gordon C. Kent, dec'd, on account of my share as his widow in the distribution of said Gordon C. Kent's estate (into which any profits from farming since his death have been carried), the sum of three hundred and sixty dollars ($360), in the shape of a credit for that amount on a balance of the same amount due from me to said estate, on an account of my receipts and disbursements thereof since said death, stated by J. W. Caldwell, to 28th March, 1874.

"[Signed]                               Jane L. Kent."

Upon this evidence the commissioner was of opinion that the farm profits were embraced in the hotchpot statement.  His finding was approved by the circuit court.  The conclusion

reached by the commissioner and the trial court seems to be in accordance with the weight of evidence ; at least we cannot say that it is clearly erroneous, without which this court will not reverse the finding of a commissioner upon conflicting evidence, where it has been approved by the trial court.

The action of the circuit court in allowing the appellee credit for the item of $17,370.91 on the balance found to be due from him by the commissioner's statement No. 2 is assigned as error. This item is the value of the farm property assigned to the appellant and his mother by the appellee in the year 1874, when they closed out their joint or partnership farming operations, with interest thereon from date. When the property was received by the appellant and his mother they gave the following receipt :

"We, Jane L. Kent and Joseph G. Kent, distributees of the personal estate of Gordon C. Kent, dec'd, hereby agree to accept and receive of David C. Kent, his adm'r, personal property, part of that belonging to the estate of the said Gordon, remaining unsold to the value of $7,227.85, at the prices to which the property so received was appraised by the appraisers appointed for that purpose, in payment of the amount due to us, respectively, as distributees.

"Given under our hands this 1st day of April, 1874.

"Jane L. Kent.
"Jos. G. Kent."

The appellant afterwards, in December, 1876, executed a receipt to the appellee for $3,663.15, in these words :

"Received from D. C. Kent, adm'r of estate of G. C. Kent, dec'd, three thousand six hundred and sixty-three dollars and fifteen cents ($3,663.15).

"The same being the amount due to my mother and myself in distribution account. This receipt I give in lieu of refunding bond from my mother and myself.

"J. G. Kent.

"Dec. 11, 1876."

The sums covered by these two receipts aggregate the precise amount found to be due the appellant and his mother by the hotchpot settlement, and by an indorsement in the handwriting of the appellant, upon the original exhibit, "Baskerville," filed in the cause by the appellee, it appears that the sum of $3,663.15 covered by the latter receipt completed the payment of the amount due the appellant and his mother by that settlement. The appellant attempts to show that, after these receipts were given, he and his brother agreed that the amount covered by the first receipt, the purchase price of the farm property, should be credited upon what was due him and his mother upon the settlement of the partnership farming business. This explanation not only contradicts the written evidence in the case, but is in conflict with the conclusion reached that the farming transactions between the parties were settled in the hotchpot settlement, so that there was nothing due upon that account upon which to credit it. We cannot say that the court erred in allowing the appellee the credit complained of.

Neither did the court err in refusing to charge the appellee with the sum of $400, alleged to have been collected by the appellee on the Boyd debt. The evidence relied on to show that this sum had been received by the administrator was an alleged admission in his answer in the case of Kent's administrator against appellee and others. The answer is copied into the record, but there is not only nothing in the record to show that it was filed, but it is stated by the commissioner in his report that it was not filed, and thus he did not allow that item for want of proof. The answer cannot be considered as a part of the record.

Applying the judgment of the appellee as upon the amount found to be due the appellant as of October 1, 1897, the date at which the commissioner closed his account, instead of the date of the decree, is assigned as error in the petition for appeal. This assignment of error was not insisted upon either in the written or oral argument of appellant's counsel, and properly so.

We have given this case the most careful consideration, and, while not entirely satisfied with the conclusion reached by the circuit court, we cannot say that it is erroneous.

If injustice has been done the appellee, it is because he has failed to perform his duty, and make settlement of his accounts, as required by law; if done the appellant, it is because he delayed asserting his rights for so long that even he himself had forgotten many facts necessary to a correct settlement between him and the appellee.

The decree will be affirmed.

HARRISON, J., absent, connected with parties.