# CHARLESTON.

HI-GRADE OIL & GAS COMPANY *v.* UNITED STATES FIDELITY & GUARANTY COMPANY.

Submitted March 20, 1923.   Decided March 27, 1923.

INSURANCE—*Parties may Waive Notice by Insurer to Cancel Policy and to Cancel by Mutual Agreement; Contract Terminated, Where Insured Surrenders Policy and Accepts Good Faith Payment by Insurer of Unearned Premium; Insured, Surrendering Policy and Accepting Unearned Premium, Cannot Thereafter Recover Thereunder on Theory That he Did Not Know he was Entitled to Five Day Notice of Cancellation.*

Where an insurance policy which insures against loss to a truck by accidental collision, contains a cancellation clause by which the insurer may cancel the policy upon written notice within not less than 5 days after notice, the parties may waive the written notice and cancel the policy by mutual consent and agreement. And where the assured, upon verbal request of the insurance company, surrenders the policy, and accepts payment of the unearned premium as of that date without objection or complaint, and without fraud or misrepresentation upon the part of the insurer, the policy contract is at an end. Recovery for damages to the truck, arising from an accidental collision thereafter occurring, cannot be recovered on the theory that the assured when he delivered up the policy accepted the unearned premium, and considered the policy as cancelled, had not read his contract and did not know that he was entitled to five days written notice of cancellation.

Error to Circuit Court, Mingo County.

Action by the Hi-Grade Oil & Gas Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Joseph A. McCullough* and *Okey P. Keadle* and *Goodykoontz, Scherr & Slaven,* for plaintiff in error.

*Bias & Chafin,* for defendant in error.

LIVELY, JUDGE:

By notice of motion for judgment on a policy of insurance, plaintiff obtained judgment for $1500 on July 24, 1922; and defendant prosecutes this writ of error therefrom. The insurance policy was upon a motor truck whereby the assured was indemnified against loss by damage to the truck caused solely by accidental collision with another object. The policy was dated July 31, 1921, and provided that it might be ''cancelled at any time by either of the parties hereto upon written notice to the other party stating upon what date thereafter (not less than five days hereafter when cancelled by the company) cancellation shall be effective, upon which date at 12 o'clock noon, the policy shall terminate.''

The first defense interposed was that the policy had been duly cancelled under this provision at the time the accident occurred damage for which is the basis of the claim sued on. Two accidents had occurred prior to the one which is the basis of this suit, and the claims arising thereunder had been promptly paid by defendant. It appears that defendant had ordered the policy cancelled, and on October 18, 1921, the local agent of defendant, Hi Williamson, went to the office of plaintiff for that purpose, where he found Lane Schofield, vice president and general manager of plaintiff company, and called for the policy. The circumstances of the alleged surrender and cancellation of the policy is detailed by Schofield as follows: ''He asked me for this policy and I had some little trouble finding it, but I dug around among our files and found it—we had a number of them—and I handed him the policy and he put it in his pocket and said, 'I have been asked by the company to cancel this policy,' and left the office with the policy.    *    *    *    *    *    The following day we got a check for $85.39 being the unearned premium. The check was put on deposit the same day as any other money.'' Williamson, the agent, testified in substance that he called upon Schofield on the 18th of October and took up the policy, cancelled it as of that date and gave the check for the return premium, which check was introduced in evidence as paid. The policy was marked cancelled on the books

of the company as of that date. This is all of the evidence relating to the cancellation, and it will be seen that there is no conflict therein. Schofield considered the policy cancelled and so states. Three days after the policy was taken up the accident occurred, resulting in the total destruction of the truck. No notice of the accident was given defendant, and no claim made for the insurance money until about two months afterwards. The reason given by Schofield for failure to give notice and make claim, was that about two months after the policy had been taken up he discovered, in reading another policy, that it contained the provision above set out that notice of the cancellation must be given in writing by the company and that cancellation would not result until five days after notice given; thereupon he went to Williamson, the agent, and procured a copy of the policy which covered the truck, and discovered that the same provisions was contained therein. Conceiving that the policy, although surrendered under the circumstances detailed, and the unearned premium returned, continued in force at the time of the accident, he then, about two months after the accident, gave notice that he would claim indemnity. Upon the refusal of payment, this suit followed.

On October 21, 1921, three days after the policy had been taken up as detailed, Clyde Goosly, who was driving the truck (on which had been placed a tank for oil delivery) around a hill on a down grade, on a narrow road, in attempting to negotiate a curve in the road, went over the embankment because the steering gear "stuck" or would not function, and the truck and tank rolled over a steep hillside and onto a railroad track about 60 yards below, where it was practically demolished. The casings, of the value of $58, were saved. A day or so after the accident the plaintiff gave the wreckage of the truck to Maynard, who sent it to the motor car repairman of the railroad company at Flat Top, who traded the engine of the truck for a Maxwell engine and built up a truck from the damaged one, using the Maxwell engine therein. It seems that there were some rocks at the edge of the roadbed where the truck left the road, on a level with the road, and the driver says that if it had not

been for the rocks and there had been a smooth surface where the left front wheel of the truck went over, possibly the truck could have been driven further so as to make it lodge against trees, 10 feet lower down the grade from where the car went over.

The second point of defense is that the truck was not damaged or destroyed by accidental collision within the meaning of the policy, even if the policy was in force at that time and had not been cancelled.

The third point of defense is: (a) because of no prompt notice of the accident to defendant, as required by the policy; (b) because no opportunity to inspect, as provided for in the policy, was given; and (c) because defendant was denied the right to repair, build or replace the truck, as provided for by the policy.

It is apparent that if the first point of defense interposed is effective, that is, that there was a legal and complete cancellation of the policy, the other defenses are superfluous. The question as to whether there was an accidental collision within the meaning of the policy, and the failure to promptly give notice of the accident and allow defendant opportunity to inspect, and repair or replace, the truck, are interposed upon the assumption that the policy was in force at the time of the accident.

On the claim of cancellation, plaintiff says that there could be no cancellation except in the manner set out in the policy, that is, by a notice in writing five days before the time it was intended that the cancellation should become effective.     It is argued that Schofield did not assent to the cancellation; that he was not asked by the agent to waive the right to a five days notice; that although he made no objection to the cancellation it was because he had no knowledge that he was entitled to a notice of five days, and not having knowledge could not and did not waive a right of which he was ignorant. Both Schofield, the vice-president and general manager, and who had charge of the insurance of the company's property, and Randolph, the president of the company, vouched the record by saying if they had been allowed to testify on that point, they would have said that they knew nothing of the

provision in the policy requiring five days notice in order. to effect cancellation. It must be conceded that Williamson went to plaintiff's office for the purpose of taking up and cancelling the policy. It was plainly evident that Schofield knew that this was his purpose as no other business was transacted between them. No objection was interposed by Schofield. He permitted the policy to be taken away for that purpose. It is argued that he did not know for what purpose Williamson wanted the policy until after it had been delivered; but then, even if nothing had been said relative thereto beforehand, Williamson told him that the policy would be cancelled, and he made no objection. On the following day he received the check for $85.39, in payment of the unearned premium, due as of October 18th, the date of cancellation, which he accepted and used for his company. The purpose for which the check was given was noted on the face thereof. He certainly knew that defendant had actually cancelled the policy, and by accepting the check he confirmed its action and discharged the contract. For what purpose could the check have been accepted? Schofield frankly says that he accepted the unearned premium and considered the policy cancelled. He said that he had had policies taken up before, and gave this policy to the agent, ''as I would give him any other policy.'' In answer to a question as to why he had not given defendant notice of the destruction of the truck, he said: ''I supposed that when we surrendered the policy the jig was up, is all. Q. You didn't know you were entitled to five days notice? A. We thought it was ended.'' The excuse for not objecting to the cancellation (although no objection seems to have been contemplated at the time) is that Schofield did not know of this provision for five days in the policy. If he had known of it, there is nothing to indicate that he would then have objected. But is that a valid excuse? Is not a party bound to know the provisions of his contract? If ignorance is a legal excuse, then the insured, on the ground of ignorance, would be exonerated from giving notice of loss, or of any other like provision of the contract. We think the court properly refused to allow this witness and Randolph, the president, to testify as to their lack of knowledge of the

five day provision. In *Munson* v. *Ins. Co.*, 55 W. Va. 423, plaintiff's policy had been burned in the fire which destroyed the property insured. Failing to receive information from the insurance company as to the steps necessary to assert his claim, he filed a bill for discovery of the terms of the policy and for a decree for the amount of loss, alleging therein that he believed he was required to furnish some sort of proof of loss before right of recovery, but could not remember the provisions of· the policy or what proof of loss was required. Relief was denied and the bill dismissed because the policy produced in response to the prayer for discovery showed that proofs of loss were necessary before suit could be brought. Judge Brannon said: ''The failure of the plaintiff in this case to furnish proof of loss cannot be excused by the loss of the policy, even if Munson was unable to remember its provisions. Persons making an imperative contract cannot plead failure of memory of its contents. They are bound to remember.'' In *Payne Realty Co.* v. *Lindsey*, 91 W. Va. 127, 112 S. E. 306, a contract of rental made by plaintiff company through its agent, had remained in the company's files in charge of its general manager for two years, and defendant had paid rentals thereunder during that time. The lease contract was for a longer term than the agent had been authorized to make. Plaintiff plead that it had never read the contract and was ignorant of its provisions which contained an extension clause beyond the two-year period. It was held that ignorance of the terms of its contract would not excuse plaintiff. It was legally bound to know. The case of *Kelly* v. *Ins. Co.*, 75 W. Va. 637, is very similar to the case at bar. The insurance company, defendant in that case, wrote plaintiff, Kelley, that it had decided to cancel the policy, asked for its return, and stated that it would repay the unearned premium when the policy was received by it. Kelley delivered the policy to the company's agent, and was credited with the unearned premium on other unpaid premiums owing by him. Within five days thereafter the property covered by . the policy was destroyed by fire, and Kelley sued to recover, claiming the policy was still in force at the time of the fire, and claiming that he did not have notice of the five days pro-

vision for cancellation in the policy. Ignorance of the terms did not excuse him. His claim of ignorance was ignored. "The terms of the policy told him of his rights, and of the rights of the defendant." See *Miller* v. *Ins. Co.*, 54 W. Va. 344. The law of contracts makes the plaintiff in the, case at bar aware of the provision for cancellation, and having delivered the policy and accepted the unearn'ed premium as of the date of surrender, he cannot be heard to say that he had no intention to cancel, or did not know his rights in that regard. No fraud or misrepresentation on the part of the agent is claimed. Both parties dealt with their eyes open, and were fully aware of their mutual rights, in the eyes of the law. The contract was rescinded, and a valuable consideration passed. Plaintiff waived its right to five days notice. *Hellig* v. *Citizens Ins. Co.*, 120 Ill. App. 58; *Phoenix Ins. Co.* v. *State*, 88 S .W. 917; *Kelsea* v. *Phoenix Ins. Co.*, 78. N. H 422; *Violette* v. *Ins. Co.*, 159 Pac. 896. Regardless of the provisions of a policy as to cancellation, it may be cancelled by mutual consent of the parties. *Cohen* v. *Mechanics & Traders Ins. Co.*, 175 Ill. App. 594; *Nelson* v. *Farm Property Ins. Asn.* 127 Iowa 603; *Cox* v. *Farm Mutual*, 133 Ga. 175; *Hollywood* v. *DeBuque Ins. Co.*, 80 W. Va. 604.

The case of *Hattie F. Baird* v. *Firemans Ins. Co.*, 108 Me. 506, is relied upon by plaintiff as authority for the proposition that there was no cancellation. An inspection of that case reveals that the agent telephoned the assured that he had instructions to cancel the policy, and requested her to forward it to him. She replied that he did not have a right to cancel, and refused to comply with his request; afterwards he called on her and took the policy in question and told her that she might as well sign it as he had cancelled it. She expressed a doubt as to his right to cancel and asked: "Can you cancel that if I do not sign it?" to which he replied, "I certainly can. It is already cancelled. It is merely a matter between you and the company about this paper. I have done my duty; I have cancelled it." He then took the paper in his possession and she asked him if he could procure other insurance for her, and he said he saw no reason why he could not, but that he was unable to write any policy that day be-

cause he had no blanks. He procured no other insurance. She did not know of the provisions for notice of cancellation, and did not know that the agent did not have power that he claimed to exercise. No return premium was attempted to be paid until after the fire. The court said that these facts did not affect a cancellation by mutual agreement. She was a widow, inexperienced, had never attended to insurance matters before, and it was held that the surrender was enforced, and her credulity imposed upon. No such elements enter into the case at bar. The parties were capable and experienced business men.

"If the evidence of cancellation by mutual consent raises no real question of fact under the issue, the court need not submit it to the jury." *Candee* v. *Citizens Ins. Co.,* 4 Fed. 143, citing *Pleasants* v. *Faut,* 22 Wall. 89, U. S. 116; *Com'rs.* v. *Clark,* 94 U. S. 278.

There is no conflict in the evidence concerning the cancellation, surrender and payment of unearned premium. The policy was not in force at the time of the accident, and defendant's peremptory instruction to find in its favor should have been given. It is unnecessary to consider the assignments of error based on the other defenses interposed.

The judgment is reversed, verdict set aside, and a new trial awarded.

*Reversed and remanded.*