## MATTHEWS v. SOUTHERN STATES LIFE INS. CO.

### Civ. A. No. 3212.

United States District Court
E. D. South Carolina, Charleston Division.

Jan. 30, 1953.

928

Paul M. Macmillan and G. W. Behlmer, Charleston, S. C., for plaintiff.

Waring & Brockinton, Charleston, S. C., for defendant.

WILLIAMS, District Judge.

This action was brought by the plaintiff to recover the sum of $4,000 as the beneficiary of Thomas A. Matthews, under the provisions of a group life insurance policy issued by the defendant to the South Carolina Law Enforcement Association, dated November 7, 1950. Thomas A. Matthews, the husband of plaintiff, died December 18, 1951. The case was tried before me and a jury on October 20, 1952, and resulted in a verdict for the plaintiff in the sum of $4,000. The defendant moved for a directed verdict at the conclusion of plaintiff's testimony and at the conclusion of all of the testimony. Both motions were refused. Within ten days after the entry of judgment on the verdict, the defendant filed its written motion to set aside the judgment, and moved that the defendant have judgment entered for it notwithstanding the verdict, or in the alternative, that a new trial be granted.

This is a most unusual case. It is quite clear that the defendant authorized its agent, Robert L. Hoffman, to collect the premiums from the Law Enforcement Agencies. The Law Enforcement Association at that time had no way of paying the premiums through an authorized agent of its own and it was therefore necessary for Hoffman, the General Agent of the defendant company, to select some member of each association in each city to collect the premiums and remit to him. Many branches of the Association were covered by the policy, and no remittance of premiums was ever made to the insurer by the General Agent until he had collected from all the branches of the Association.

Under the terms of the policy it would have expired on October 15, 1951. The testimony showed that neither the defendant nor the plaintiff ever intended terminating the policy at the end of the year for, immediately after October 15, 1951, premiums were paid through local agents to Robert L. Hoffman, General Agent, by several branches of the Association. One of these agents was John W. Wohlers of the Charleston Branch of the Association. There is no doubt that Wohlers collected the premiums not only from Matthews but from other members in the City of Charleston. On December 18, 1951, the day the plaintiff's husband died, Wohlers sent his check to the General Agent of the company for a sufficient amount to cover the premiums of the Charleston members from October 15, 1951 to December 15, 1951. This check was returned marked "insufficient funds." Early in January the Chief of Police, Chris H. Ortmann, sent a check to the insurance company for $733.04 for payment of premiums from October 15, 1951, to December 15, 1951. This check was accepted by the company, and monthly checks were mailed thereafter until October 15, 1952, when the policy was terminated by the company or the South Carolina Law Enforcement Association.

The questions to be determined are: (1) Did the company waive its rights to declare a forfeiture as to Thomas A. Matthews? and (2) May the defendant refuse pay-

ment to the beneficiary without refunding the premiums which were admittedly paid by the deceased?

The defendant has submitted a very able brief in support of its position. The brief, however, overlooks the fact that the first question (that of waiver) is a question of fact which was properly submitted to the jury.

It is admitted that the defendant had the right to cancel the policy immediately upon the failure of the Association to pay the premiums which were due on October 15, 1951, and that it was under no obligation to notify the insured that it intended to cancel the policy. The policy was written for a period of one year and was subject to renewal by the consent of both parties upon the payment of the premiums. If the Association had refused to make any payments of premiums, there would be substantial grounds for the position taken by the defendant. But the testimony shows conclusively that the General Agent, Hoffman, commenced receiving payments from various branches of the Association immediately after October 15, 1951. Neither party intended to cancel the policy at that time, either in whole or in part.

A waiver, of course, is the relinquishment of a known right. This is a question of fact to be determined by the jury. There is ample evidence to support the verdict of the jury. The acts of the company's duly authorized agents showed that it intended to waive its rights to cancel the policy. The question of waiver was submitted to the jury, and I charged the law fully with reference to waiver. No exception was taken to the charge as to waiver. The jury decided that there had been a waiver. I specifically charged that the company had a right to cancel this policy and refuse to continue it in force unless it had waived its right by some act of its duly authorized agent. In my charge to the jury I stated:

"The provision for forfeiture of an insurance policy for non-payment of premiums is inserted for the benefit of the insurance company, and it may waive such a provision or be estopped to deny its breach.

"The insurance company is under no obligation to enforce the condition of the policy, and it may waive a provision after, as well as before, a forfeiture has occurred.

"Where an insurer gives its consent to a violation by the insured of the conditions of the policy, or where after a ground of forfeiture has occurred, of which the insurer has knowledge, the insurer informs the insured that the policy will be allowed to stand, there is a waiver of the breach.

\* \* \* \* \* \*

"Waiver may be made by insurer through agent.

\* \* \* \* \* \*

"Waiver is predicable on any act or conduct of the insurer, after knowledge of a breach, either before or after the loss, tending to show recognition of the validity of the policy, and intent to relinquish the right to avoid it for the known breach.

\* \* \* \* \* \*

"\* \* \* this is an unusual case and if only an individual policy were involved, it wouldn't be so much trouble. But I think that the proper legal viewpoint to submit to you is this:

"That you are to consider all of the facts and circumstances that have been developed at this hearing, the manner in which the agent collected the premiums, the persons through whom they were collected, and to consider all the facts and circumstances in making up your minds as to whether or not there has been a waiver. Now if there has been no waiver, the defendant is entitled to recover. \* \* \* I am frank to tell you that you have a rather unusual case presented in view of the fact that the insurance company permitted this policy—the premiums to go unpaid sometimes for as much as 60 or 75 days, without declaring any forfeiture, without declaring any of the rights that they had.

"And I think the proper thing for me to tell you is that you are to con-

sider all those facts and circumstances to determine whether or not in your opinion, as good men of common sense, that the company has waived a right which it had under the policy."

 No objection was made to the charge, and this is, therefore, the law of the case. Acting on this charge, the jury found for the plaintiff. This necessitated, of course, finding that the defendant had waived its right to declare a forfeiture and that it had acted through duly authorized agents. The testimony abundantly supports the findings of the jury.

In view of the finding of the jury that there had been a waiver, I do not think that it would be proper for me to interfere with the verdict of the jury.

 The second question must be answered against the defendant. The law of South Carolina is that an insurance company cannot cancel a policy of insurance unless the premiums which have been paid are refunded. There is no question that Thomas A. Matthews paid the premiums to an authorized agent of the company, and on the day he died this agent sent a check to Hoffman, the General Agent. It is true that this check was returned marked "insufficient funds," but another check was sent later which was accepted. The company knew at the time it accepted this check that Matthews had paid his premiums.

I can find no case in South Carolina which holds that an insurance company may refuse to pay the beneficiary of a policy without refunding the premiums which it has received from the insured.

In the case of Herndon v. Continental Casualty Co., 144 S.C. 448, 142 S.E. 648, it is held that when a policy of insurance is issued and the premiums paid and not refunded, such policy cannot be cancelled by the insurance company even though notice of such attempted cancellation be given to the policyholder. In the case of Hamilton Ridge Lumber Co. v. Boston Insurance Company, 133 S.C. 472, 131 S.E. 22, it is held that premiums which have been collected must be returned where a party seeks relief from a contract into which he has entered.

For the foregoing reasons, the motion for judgment notwithstanding the verdict and for a new trial is hereby denied.

And it is so ordered.