Lorraine A. FREEMAN

v.

METROPOLITAN LIFE INSURANCE
COMPANY and Bluefield
Hardware Company.

Civ. A. No. 77–0175(R).

United States District Court,
W. D. Virginia,
Roanoke Division.

April 19, 1979.

Burton L. Albert, Lutins & Shapiro, Roanoke, Va., for plaintiff.

Richard E. Viar, Dodson, Pence, Viar, Young & Woodrum, Roanoke, Va., for Bluefield Hardware.

John L. Walker, Jr., Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for Metropolitan Life Ins. Co.

## MEMORANDUM OPINION

DALTON, District Judge.

This action is brought by Lorraine A. Freeman [plaintiff], named beneficiary under a group insurance plan of her late husband, Joe Barton Freeman [Freeman], against her husband's former employer, Bluefield Hardware Company [Bluefield], and its group insurance carrier, Metropolitan Life Insurance Company [Metropolitan]. She sues to recover on this policy, or for damages arising from its cancellation, allegedly done negligently and in breach of policy provisions. Jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332(a)(1)&(c). The parties have submitted briefs, documentary evidence and an affidavit. The court is considering this case upon both defendants' motions for summary judgment. Rule 56(b)&(c), F.R.C.P.

Freeman was first employed by Bluefield on July 22, 1975. At that time he enrolled in his employer's group insurance plan with Metropolitan. Included among the benefits was a life insurance policy, equal in value to Freeman's "basic annual earnings, as determined by [Bluefield]," rounded up to the nearest multiple of $500, with minimum coverage of $2,000 and maximum coverage of $40,000. Another provision of equal value insured plan employees against death or dismemberment by accidental means. When Freeman enrolled he completed and signed a card naming his wife, the plaintiff, as beneficiary. Immediately above his signature was printed the following declaration:

"THIS SECTION TO BE COMPLETED AND SIGNED ONLY IF THE EMPLOYEE CONTRIBUTES TOWARD THE COST OF THE PLAN. I desire to be insured for the Group Insurance underwritten by Metropolitan Life Insurance Company as described in my Employer's Announcement and authorize my Employer to deduct from my pay my contribution to the cost thereof. *This request and authorization* applies to any such plan of insurance as presently constituted or hereafter changed for which I am or may become eligible and *shall continue to apply until rescinded by me in writing.*" [Emphasis added]

After a 90-day waiting period, Freeman was to become eligible for benefits under the plan and deductions were to commence being taken from his paycheck to cover his contribution towards premium payments.

For reasons unexplained, Bluefield made these contributions on Freeman's behalf from November, 1975 through June, 1976 without taking any deduction from his pay. In June of 1976 L. D. Mattox, Jr., another employee of Bluefield and manager of its accounts payable, discovered the failure to assess premium payments against Freeman's payroll account. He corrected this error, and deductions for group insurance of $15.23 were made from Freeman's paychecks of July 31, August 31 and October 6, 1976, a total of $45.69.

At this point, the court relies upon the testimony of Mr. Mattox, taken at a deposition before counsel for plaintiff and Bluefield. Freeman called Mattox on October 13, 1976 and stated, "I want to cancel my group insurance policy with Bluefield Hardware." Mattox explained that the policy included insurance against death, accident and sickness, as well as a double indemnity provision, but Freeman replied that that was too much money to pay for that kind of insurance. Mattox told Freeman that he would need the cancellation in writing. Mattox notified Metropolitan on November 1, 1976 that Freeman was no longer covered under the plan. Freeman came into Mattox' office on November 10, 1976, requesting a refund for deductions already made. Mattox again asked Freeman for a written request to cancel his coverage under the group policy. Freeman replied that he was busy, but would mail the request in. Mattox told Freeman that he would receive a refund check when vouchers were written. No further deductions were taken from Freeman's pay for insurance premiums. On November 17, 1976 Bluefield issued a check to Freeman in the amount of $45.69.[1] Freeman endorsed the check and negotiated it through Bette C. Thomas and the Mountain Trust Bank of Roanoke, Virginia no later than November 22, 1976. Bluefield, however, never received any other writing from Freeman authorizing the cancellation of his coverage under the group insurance plan.

On March 9, 1977, Freeman was killed in an automobile accident in Mercer County, West Virginia, while still in Bluefield's employ.

▮ The first issue before the court concerns the deposition of L. D. Mattox, Jr., including his testimony about the conversations between him and Freeman with regard to cancelling Freeman's insurance coverage and the refund check Freeman was to receive. Plaintiff objects that these statements constitute hearsay and are inadmissible in this proceeding. Rules 802, 1101, F.R.Evid. The Federal Rules of Evidence include the following definition:

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearings, offered in evidence to prove the truth of the matter asserted. Rule 801(c), F.R.Evid.

It is clear to the court that neither of the crucial statements made in the conversations between Mattox and Freeman constitute hearsay when recounted by Mr. Mattox in his deposition, because neither is being "offered in evidence to prove the truth of the matter asserted." Freeman's purported statement, "I want to cancel my group insurance policy with Bluefield Hardware," constitutes a "verbal act". 6 Wigmore, Evidence § 1770 (Chadbourn rev. 1976); 4 Weinstein's Evidence ¶ 801(c)[01], Verbal Acts, pp. 801–59 (1977); McCormick, Evidence § 249 (2d Ed. 1972); *Creaghe v. Iowa Home Mutual Casualty Co.*, 323 F.2d 981 (10th Cir. 1963). Whether Freeman in fact subjectively "wanted" to cancel his coverage is irrelevant. The statement is important because it was *made* in Mattox' presence, and bears upon his reasonableness in acting in accordance with it. Therefore, its admission here does not violate the rule against hearsay. Likewise, Mattox' statement to Freeman that he would receive a refund check when vouchers were written is not important because it is true, but because it shows that Freeman had notice of the nature of the check he would receive, and is evidence of his state of mind when he endorsed and cashed it. Wigmore, *supra*, § 1789. It, too, is admissible.

---

1. Freeman's paychecks during this period varied between $495.86 and $979.04.

■ Next the court must consider whether Metropolitan retained any duty to insure Freeman's life after Bluefield removed his name from the roll of its insured employees, regardless of the propriety of its removal. This question appears to have been settled in Virginia in a case involving this same insurer, *Collins v. Metropolitan Life Ins. Co.*, 163 Va. 833, 178 S.E. 40 (1935). *Collins* is similar to the present case except that the employer there cancelled the employee's group coverage when he left work due to disability, rather than pursuant to the employee's explicit directions. Justice Holt explained the nature of coverage under a group insurance policy,

> The company makes out a monthly roll of its employees which it submits to the insurer, and premiums are paid accordingly. That is to say, if the name of a new employee is added premiums are increased. If the name of one is stricken off there is a corresponding decrease. The insurer cannot possibly check from month to month the accuracy of the lists submitted, and it cannot be expected to insure one whose name does not appear. If the company fails to include a name which it should have included, then it may possibly become liable for any injury suffered from this omission; but that negligence cannot be imputed to the insurer.

*Collins v. Metropolitan Life Ins. Co., supra,* 178 S.E. at 42.

As was the case in *Collins*, Bluefield was responsible for keeping a list of insured employees, collecting their premium payments and informing Metropolitan of any changes. Apparently Metropolitan had no direct contact with Freeman concerning the policy. In light of the holding in *Collins*, this court must conclude that there has been no breach of any duty owed by Metropolitan to Freeman in this case.

■ Finally, the court must consider whether there is any liability on Bluefield's part for having cancelled Freeman's coverage. By the terms of his signed authorization, it appears that Freeman's coverage was to continue until rescinded by him in writing. Such a provision in an insurance contract, however, does not prevent the parties from rescinding that contract orally. In a similar case in this very court, Judge Barksdale, after an exhaustive search of pertinent authority stated,

> It is quite true that the method of cancellation provided in the policy was not followed, and no one contends that it was. However, it seems clear to me that the method of cancellation provided in the contract of insurance is not exclusive, and even if the policy in terms said it was the only method, I do not believe such a provision would prevent abrogation by mutual agreement. It seems to me beyond question that two parties to a simple contract, who are sui juris, during the term thereof, in the absence of fraud, may, by mutual consent, abrogate the same, if such agreement of abrogation has all the elements of a valid contract, including valuable consideration.

> "§ 387.—*Right to Rescind*

> "*The parties to an executory contract may abrogate, rescind, or abandon it by mutual agreement independent of any provision in the contract permitting them so to do.*

> "The parties to an executory contract may abrogate, rescind, or abandon it by mutual agreement, although it is in writing. The right to terminate a contract by mutual consent exists independent of any provision in the contract permitting the parties so to do, and the parties may annul the contract, notwithstanding a contrary stipulation. Rescission by agreement implies an existing and unbroken contract. A contract, valid on its face, and actually carried out in full with the acquiescence of all concerned, cannot subsequently be repudiated. The right of rescission is confined to the parties to the contract or to those acting in their right."

17 Corpus Juris Secundum, Contracts, § 387, p. 879.

> "The question thus presented is, Where it is stipulated in a contract that changes or modifications must be made in only one way, can the parties by mutual

agreement change or modify the contract in any other way?

"The insurance contract introduced in evidence is not under seal. Under common-law principles, the provisions of a simple contract in writing, by subsequent parole agreement of the parties before breach, may be waived, rescinded, added to, changed, or modified. *Piedmont Mt. Airy Guano Co. v. Buchanan*, 146 Va. 617, 626, 131 S.E. 793; *Warren v. Goodrich Strip & Screen Co.*, 133 Va. 366, 112 S.E. 687; *Moore v. Williamson*, 213 Ala. 274, 104 So. 645, 42 A.L.R. 981, and note; 13 Corpus Juris, § 609, p. 593; 6 R.C.L. §§ 298, 299, pp. 914, 915; *Teal v. Bilby*, 123 U.S. 572, 8 S.Ct. 239, 31 L.Ed. 263; *Utley v. Donaldson*, 94 U.S. 29, 24 L.Ed. 54; *Swain v. Seamens*, 9 Wall. 254, 19 L.Ed. 554. This rule seems to be generally recognized in both the state and federal courts. The rule is applied notwithstanding the fact that the parties have stipulated in the contract that it can be changed or modified in only one specific way. Williston on Contracts, vol. 3, § 1828, states the rule thus:

" 'A contract in writing, but not required to be so by the Statute of Frauds, may be dissolved or varied by a new oral contract, *which may or may not adopt as part of its terms some or all of the provisions of the original written contract.* * * * Nor does it make any difference that the original written contract provided that it should not be substantially varied except by writing. This stipulation itself may be rescinded by parole and any oral variation of the writing which may be agreed upon and which is supported by a sufficient consideration is by necessary implication a rescission to that extent.' See 6 R.C.L. §§ 298, 299, pp. 914, 915; *Simpson v. Mann*, 71 W.Va. 516, 76 S.E. 895, 48 L.R.A., N.S., 579; 13 Corpus Juris, § 611, p. 594; *Piedmont Mt. Airy Guano Co. v. Buchanan*, supra.

"In the absence of statutory requirement, there is no reason why the courts should not apply these principles to the construction of insurance contracts, as well as others, and the authorities so hold.

See Cyclopedia of Insurance Laws, Couch, § 1385; *American Eagle Fire Insurance Co. of New York v. McKinnon*, 36 Ariz. 409, 286 P. 183; 32 Corpus Juris, § 257, p. 1147; Wigmore on Evidence, par. 2441. . . ." *Zurich General Accident & Liability Ins. Co. v. Baum*, 159 Va. 404, 408, 165 S.E. 518, 519 [1932].

*Prillaman v. Century Indemnity Co.*, 49 F.Supp. 197, 201–202 (W.D.Va.1943), aff'd 138 F.2d 821 (4th Cir. 1943). See also 17 Am.Jur.2d, Contracts § 492, p. 965.

■ Such an oral rescission, however, must be proved by clear and convincing evidence. *Kent v. Kent*, 2 Va.Dec. 674, 34 S.E. 32 (1899); *State ex rel. Coral Pools, Inc. v. Knapp*, 147 W.Va. 704, 131 S.E.2d 81 (1963). The uncontroverted evidence submitted with defendants' motions satisfies this standard.

■ In any event, there *is* a signed writing which evidences Freeman's ratification of the coverage cancellation. While there is no notation on the November 17, 1976 check signifying that it was issued in refund of Freeman's premium payments and in cancellation of his group insurance coverage, it is clear from the circumstances surrounding its issuance that Freeman endorsed and negotiated the check in awareness of that fact. Therefore Bluefield properly struck Freeman's name from its insurance rolls. *See Hi-Grade Oil & Gas Co. v. U.S.F. & G. Co.*, 93 W.Va. 448, 117 S.E. 157 (1925); *Kelley v. Aetna Life Ins. Co.*, 75 W.Va. 637, 84 S.E. 502 (1915); Annotation, Mutual rescission, waiver, ratification, or estoppel, as regards insurer's attempt to rescind policy of insurance or particular provisions thereof, 152 A.L.R. 95, 105, 114 (1944).

■ Mrs. Freeman also argues that as her husband's designated beneficiary she had acquired vested rights in his coverage under the group life plan which could not be terminated without her consent. "It is well established that if the insured retains no right to change the beneficiary of a life insurance policy or . . . gives up that right, the beneficiary stands in the position of a third party beneficiary to the insurance

contract with indefeasibly vested rights in the proceeds. *Central National Bank of Washington v. Hume*, 128 U.S. 195, 206, 9 S.Ct. 41, 32 L.Ed. 370 (1888). See generally 4 Couch on Insurance 2d § 27:56. This is the law of West Virginia. *Hechmer v. Gilligan*, 28 W.Va. 750, 755 (1886). Most authorities are also in agreement that the insured cannot deal with the policy in such a way as to defeat the irrevocably designated third party beneficiaries' interest in the proceeds, by, for example, surrendering the policy for its cash surrender value, without the consent of the beneficiaries, . . . *Castellina v. Vaughan*, 122 W.Va. 600, 11 S.E.2d 536 (1940)." *Morton v. United States*, 457 F.2d 750, 753 (4th Cir. 1972) (footnote omitted). These principles are also the law in Virginia. *Valley Mutual Life Ins. Co. v. Burke*, 1 Va.Dec. 508 (1882). See also, 10B Michie's Jurisprudence, Insurance, § 106, p. 50 (1977); 43 Am.Jur.2d, Insurance, § 434 (1969).

Bluefield responds that Mrs. Freeman had no indefeasibly vested right because the terms of the policy bestowed upon her husband the right to change his beneficiary, and submits as an exhibit the appropriate portions of that policy. The court is reluctant to accept this reasoning, since nothing was stated on Freeman's enrollment card reserving the right to change beneficiaries, and the terms on that card would seem to represent Freeman's understanding of his employer's undertaking. See *Castellina v. Vaughan*, 122 W.Va. 600, 11 S.E.2d 536 (1940). Nevertheless, plaintiff's argument must fail. First, Freeman's enrollment card did specifically reserve to him the right to rescind authorization for his participation in the plan. Second, the court doubts whether the doctrine of a beneficiary's vested rights applies to a group policy such as the one at issue here. In *Matthews v. Southern States Life Ins. Co.*, 109 F.Supp. 927 (D.S.C.1953), the District Court held that the doctrine did apply and that upon cancellation of a group life insurance policy the beneficiary had the right to receive a refund of premiums paid. But the Court of Appeals reversed this decision, *Southern States Life Ins. Co. v. Matthews*, 205 F.2d 830 (4th Cir. 1953), holding that the group life policy was a variety of term insurance which "ceased to exist by virtue of its express terms" when no steps were taken to renew it and that the beneficiary was not entitled to recover. 205 F.2d, at 832. The Supreme Court of Virginia has also intimated that a beneficiary has no vested rights in a policy of life insurance where the insured has no obligation to continue making premium payments and may abandon the policy at his will. *Valley Mutual Life Ins. Co. v. Burke, supra*, at 512. Third, and most persuasive, the authority is clear that plaintiff's rights whether or not vested, were cut off when her husband refused to make further premium payments in accordance with the policy and accepted a refund of payments already made. *Miles v. Connecticut Life Ins. Co.*, 147 U.S. 177, 13 S.Ct. 275, 37 L.Ed. 128 (1893); *Leonhard v. Provident Savings Life Assur. Soc.*, 130 F. 287 (8th Cir. 1904).

For these reasons, this court is of the opinion that defendants are entitled to summary judgment on plaintiff's claims, and defendants' motions are, therefore, granted. Rule 56(c), F.R.C.P.

Judgment will be entered in accordance with this opinion, and plaintiff shall bear all costs.